THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL B. DONALSON, Defendant-Appellant.

First District (4th Division)   No. 60097

Opinion filed June 23, 1977.

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Michael J. Angarola, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Carl B. Donalson was charged with and indicted for the offenses of murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 9—1), and of attempt armed robbery in violation of section 8—4 (Ill. Rev. Stat. 1969, ch. 38, par. 8—4). Following a jury trial, defendant was convicted of murder and attempt armed robbery. He was sentenced to a term of 20 to 40 years in the penitentiary for murder and did not receive a sentence for the conviction of attempt armed robbery. Upon appeal, this court reversed the conviction because the defendant was not brought to trial within 120 days. (*People v. Donalson* (1975), 32 Ill. App. 3d 195, 336 N.E.2d 539.) The supreme court reversed this court and remanded the matter for consideration of the other points raised by appellant. *People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776.

On the evening of January 29, 1972, the defendant was arrested by Chicago police officers of the Area 4 robbery unit. He was questioned concerning several robberies and then about a homicide which occurred on January 21, 1972, at a Martin gas station. Defendant made inculpatory statements indicating his participation in the homicide. Subsequently, defendant filed a motion to suppress his confession because it was involuntarily given, due to a denial of his right to counsel and of his right to communicate with his family. In order to properly discuss the issues raised by the defendant, a review of the motion to suppress hearing and of the trial is essential.

The following evidence was heard on the motion to suppress:

*For the State*
Investigator Thomas Sherry

Area 4 Homicide Detective Sherry first saw the defendant at 9 p.m. on January 29, 1972. Defendant was in the custody of Area 4 robbery investigators Gall and Morello, and was under interrogation by them for robberies of some west side gas stations for approximately 1 to 1½ hours. After a lineup, Griffin and Sherry were allowed to question the defendant. It was 10 or 10:30 p.m. He was informed of his rights, he acknowledged that he understood them, and when questioned with regard to a homicide at Roosevelt and Independence, he denied committing the homicide, but admitted committing two other robberies.

While attempting to locate witnesses for a lineup, defendant was left handcuffed in the interrogation room. Upon returning to the station, and after telling defendant there would be a wait for the witnesses, he (the

defendant) told them that he was at the Roosevelt and Independence gas station. He was given his *Miranda* rights again.

Griffin and Sherry then conducted an interview of the defendant at 11:30 p.m. regarding events occurring on January 21, 1972. Donalson said he was employed as a security guard with W. L. Lillard Detective Agency and had been assigned to a grocery store on January 20. He said he left the store around 7 p.m., committed two robberies, returned to the store at 8:30 p.m., turned the gun in to the agency stating he quit his job, checked out at 9:30 p.m., went bowling, and returned home at 1 a.m. on January 21. He further said that he went to the Roosevelt and Independence Martin gas station, ordered $3 worth of gas, the car would only take 45 cents worth, and tendered $10 to the attendant. When the attendant gave him change, he demanded all his money, and the attendant said he would have to kill him to get the money. The gun went off and defendant drove the car away. He removed the empty cartridge from the gun at Keeler and Roosevelt, threw it on the street, and went home.

Mr. Donalson said he would give a statement to the assistant State's Attorney. He was given a meal prior to the assistant State's Attorney's arrival. He made a phone call, supposedly to his wife, but Sherry could not remember if this was before or after the assistant State's Attorney arrived. There were no marks on the defendant's body. Sherry contacted Lillard and the gun Donalson had used was sent to the station around 5 a.m. Sherry did not see the defendant sign the statement taken by the assistant State's Attorney.

The court ruled there was no basis for questioning concerning probable cause for arrest at a hearing on a motion to suppress a confession.

### For the defendant

Alonzo Davis, step-father; Marguerite Donalson, sister-in-law;
Suzie Davis, mother; Susie Love, friend; Effie Lee Donalson, wife

All of the above described signs of physical abuse on the defendant's body which they had seen when they visited the defendant on the morning of January 30, 1972. They said that the photograph taken of the defendant did not accurately portray his physical condition. His sister-in-law, mother, and wife testified that the defendant said he had been beaten into confessing. His wife testified that she received a call from Carl at 3:15 a.m. on January 30. She also related that he told her every time he asked for a lawyer he was beaten.

### Carl Donalson, the defendant

Donalson was arrested on January 29, around 8:15 or 8:30 p.m. He was stopped while driving, showed his driver's license, and he and the car were searched. The defendant was taken to the Maxwell Street police

station, but was not informed of his constitutional rights at that time. He was taken to a small room and handcuffed to the wall. Investigator Griffin came into the room around 9 p.m. and asked him about the ownership of the car. Defendant showed him the ownership papers. The defendant was not advised of his constitutional rights and was not told that he could have a lawyer present. Griffin next asked about an alleged murder and informed the defendant that he was being held for the murder of Alexander Jones which occurred at the Martin gas station on the corner of Roosevelt and Independence. Griffin said he would hold him until he got the desired information and further stated that it was he, the defendant, who shot the attendant. The defendant denied the accusation, but Griffin kept repeating the same questions and allegations over a period of 45 minutes. Griffin said that if the defendant did not tell him the truth he would throw him out the window, but there was no physical contact then.

The defendant testified, "I asked Mr. Griffin if I could make a phone call so I could contact my people so that I could get some legal advice and he said I could not make a phone call." Griffin left for about 45 minutes, and upon his return started interrogation again. Griffin told the defendant that if he did not tell him what he wanted he would suffer the consequences. Griffin hit him on the right side of the face with his open hand and again asked the defendant about the gas station. The defendant stood up for fear of being hit again and Griffin kicked him in the groin. He questioned the defendant again and hit him on both sides of the face. He read some things off a paper and told the defendant this was what he was going to confess to. The defendant said he would sign anything. Griffin then hit the defendant with a black object on the legs and told him to read the paper and tell the assistant State's Attorney everything that was on it.

The paper contained everything that Sherry testified to regarding the gas station incident. Griffin again left for about one-half hour to 45 minutes. During this time, Sherry was in the room. He did not beat the defendant. Then Griffin returned and Sherry left. He asked the defendant to sign the confession and the defendant said no. Griffin hit him in the thighs and said an assistant State's Attorney would come and the defendant should tell him what was on the paper, and also told him to sign the paper or there would be more beatings.

The assistant State's Attorney came in, then left, and returned with Griffin and a court reporter. The assistant State's Attorney read the defendant his constitutional rights, asked him if he understood them, and started the questioning.

Regarding this questioning, Mr. Hall, defendant's attorney, adduced the following evidence:

"Q: [D]id the State's Attorney at that time offer to get a lawyer before questioning?

A: No, he didn't.

Q: And did you want a lawyer before he questioned you further?

A: Yes, I did.

* * *

Q: Why did you sign it [the statement]?

A: I signed it because Officer James Griffin told me that if I didn't sign it after the State's Attorney's arrival, that I would endure further beatings, * * *."

*For the State*

James Griffin, Area 4 Homicide Investigator

He talked to the defendant after the lineup around 10 p.m. Officer Sherry advised him of his rights. Donalson admitted certain robberies but denied the homicide. He and Sherry told the defendant that they would return with witnesses and before leaving, they handcuffed him to the wall. He and Sherry returned around 11:30 p.m., unable to locate the witnesses, and indicated they would have to wait for them.

The defendant started to make a statement and Griffin advised him of his constitutional rights. The defendant said he owned a bronze 1965 Cadillac and that he left work as a guard around 7:30 p.m. He said he was hungry so Griffin got him some chicken. Griffin questioned him for approximately 20 to 25 minutes.

Between 11:30 p.m. and midnight, Griffin told the defendant that an assistant State's Attorney would come in to take a statement and he agreed. Assistant State's Attorney Benson arrived around 1 a.m. During the interim, defendant remained in the room eating his chicken. He was not abused in any way. Griffin was present when the assistant State's Attorney took his statement.

Griffin seemed to remember that the defendant wanted to call his relatives, but he could not recall if it was about an attorney. The defendant never told Griffin that he wanted an attorney present or to stop the questioning.

Officer Sherry interrogated the defendant during the first session and Griffin questioned him later.

*William Benson, assistant State's Attorney*

He arrived at the station around 1 a.m. and Mr. Griffin introduced him to the defendant. Griffin left and he asked the defendant how he had been treated. He said fine. The court reporter arrived about 15 to 30 minutes later.

The following colloquy took place:

"Benson: You not only have the right to consult with a lawyer

before any questioning, but if you lack financial ability to retain a lawyer, a lawyer will be appointed to represent you before any questioning, and you may have the appointed lawyer present with you during any questioning. Do you understand that?

Defendant: Yes, I do.

Benson: Do you know what that means also?

Defendant: I'm aware.

Benson: Do you have any questions?

Defendant: Just one. If I accept a lawyer, how long will it take for me to receive his assistance?

Benson: Well, if you wish to have a lawyer appointed for you, there are public defenders. If you are asking how long it would take right now to get one, I really don't know. I suspect, but I'm not certain but I suspect there are lawyers on duty, on duty probably all night. We could call for one if you thought you would need an attorney.

Now if your question is how long would it take an attorney to represent you in a courtroom or something such as that, again if you requested a public defender and if the public defender's office accepted you as a client, they would have somebody over as soon as they could; today, tomorrow or the next day or so on.

If you need an attorney to represent you in court, of course they will have somebody in a courtroom.

Defendant: Very well, I'll accept it as it is.

Benson: Okay. Knowing this, do you wish to make a statement?

Defendant: Yes, I would.

Benson: Okay, Mr. Donalson, knowing that you have the right to remain silent, knowing that what you say can and will be used against you in court, and knowing that you have a right to have a lawyer present with you before any questioning and the right to consult with a lawyer before any questioning, do you still wish to make a statement?

Defendant: Yes."

Recording his entire statement took 45 minutes to 1 hour. At the end of the statement, he asked the defendant if he would like to contact his family. He said he had not made any calls and that his wife did not know where he was. He then called his wife. Benson did not see any welts or bruises on the defendant. The defendant signed every page of the statement. Officer Porter and Benson signed the statement also. Benson did not attempt to get in touch with an attorney for the defendant because he believed his answers indicated he did not want one.

Mr. Hall made a motion to quash the arrest at the end of the motion to suppress hearing which was summarily denied.

The following pertinent evidence was heard at the trial:

Mr. Hawkins, an eyewitness, stated that on the night of the homicide, he was talking to two people when he heard a noise and turned and saw Alexander Jones fall to the driveway. He got a quick glance at the perpetrator's car and described it to the police as a 1962 to 1964 four-door beige Cadillac.

Burt Nielson, a firearms identification technician for the Chicago Police Department, testified that he examined the pellet removed from the body of Alexander Jones which disclosed that it was an excessively damaged .38 caliber bullet. He could not conclusively find that the removed bullet was the same as the test-fired bullet, but was able to determine that the removed bullet had the same class characteristics as a bullet fired from a .38 caliber Smith & Wesson revolver.

Officer Gall, one of the arresting officers, testified that he observed the defendant getting into a 1964 Cadillac, four-door hard-top, goldish-brown in color. He was conducting a robbery investigation at that time. He observed that the vehicle had no license plates and a rag was stuffed into the gas filter tube. He stopped the vehicle and inquired why there were no license plates or city sticker. Mr. Donalson, the driver, was placed in custody. Gall's partner read the defendant his constitutional rights.

Officer Porter, one of the officers in the room with assistant State's Attorney Benson and the defendant, testified that he placed the gun which Lillard Detective Agency sent to the police station in a display with two other guns and asked Mr. Donalson to pick the weapon which had been issued to him by the Agency. Mr. Donalson picked out the gun which had been issued to him, a .38 Special Smith & Wesson.

Edward Strabawa, court reporter who took Donalson's confession, read Mr. Donalson's confession into the record which is essentially the same as those statements made to Officer Sherry.

The other evidence adduced at trial is either substantially similar to the testimony at the motion to suppress hearing or is not relevant to the issues raised herein.

The issues presented for review are (1) whether the defendant knowingly and intelligently waived his right to counsel during questioning by the police and whether he was deprived of his right to communicate with his family; (2) whether the defendant waived the issue of probable cause for arrest, or, alternatively, whether there was probable cause for arrest; (3) whether the defendant's confession was sufficiently corroborated; and (4) whether convictions for two offenses arising out of divisible acts during the same transaction may be affirmed.

■■ Regarding the first issue, on a motion to suppress a statement as involuntary, the trial court must determine whether the accused was

advised of his constitutional rights and knowingly and voluntarily waived them. (*People v. Glanton* (1975), 33 Ill. App. 3d 124, 142, 338 N.E.2d 30; *People v. Gonzales* (1974), 22 Ill. App. 3d 83, 86, 316 N.E.2d 800.) The totality of the circumstances should be viewed to determine if the defendant knowingly and intelligently waived his right to counsel and no single factor is controlling. (*People v. Baker* (1973), 9 Ill. App. 3d 654, 659, 292 N.E.2d 760; *People v. Laurant* (1970), 131 Ill. App. 2d 193, 199, 264 N.E.2d 886.) Three factual areas must be resolved in order to determine whether the trial court's finding that defendant's statement was voluntarily made was correct.

■■ The first factual area to be resolved is did the defendant ask to call his family in order to obtain an attorney. According to *Miranda v. Arizona* (1966), 384 U.S. 436, 445, 16 L. Ed. 2d 694, 86 S. Ct. 1602, in order to insure protection of the accused's *Miranda* rights, if the accused "indicates *in any manner* and at any stage of the [interrogation] process that he wishes to consult with an attorney before speaking, *there can be no questioning.*" (Emphasis added.) A review of the testimony shows that the evidence relating to whether the defendant requested permission to make a phone call, whether it was for the purpose of obtaining an attorney, and at what point in time the request was made, was conflicting and not reconcilable. The defendant testified that he requested to make a phone call in order to contact his family for the purpose of procuring an attorney after the initial interrogation. Officer Sherry testified that the defendant made a phone call, supposedly to his wife, but could not remember if it was before or after the assistant State's Attorney arrived. Officer Griffin said he seemed to remember that the defendant wanted to call his relatives, but he could not recall if it was about an attorney. When the evidence is conflicting, it is the duty of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, and, on review, this court will not substitute its judgment for that of the trier of fact. (*People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96.) The finding of the trial court will not be disturbed upon review unless it is contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601; *People v. Higgins* (1972), 50 Ill. 2d 221, 225, 278 N.E.2d 68; *People v. Morgan* (1976), 39 Ill. App. 3d 588, 596, 350 N.E.2d 27.) The trial judge, at the motion to suppress hearing, reviewed all of the evidence and resolved the conflict in favor of the State. After reviewing the evidence, we cannot conclude that the trial court's finding is contrary to the manifest weight of the evidence.

■■ Next, defense counsel argues that defendant desired to speak to an attorney and attempted to exercise his rights during his conversation with assistant State's Attorney Benson. After examining the colloquy between the assistant State's Attorney and Mr. Donalson, presented at

the motion to suppress hearing, the defendant's question does not indicate a request for an attorney. Furthermore, he indicated he was willing to make a statement. Once the defendant had been informed of his rights and indicated he understood those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knew his rights and chose not to exercise them. (*Higgins*, at 227.) His remarks indicate an understanding of his rights and a desire to give a confession. It appears from the trial court's finding that it also reached the same conclusion. The trial court's finding that defendant's confession was voluntarily made will not be disturbed upon review unless it is contrary to the manifest weight of the evidence. (*Prim*, at 70; *Higgins*, at 225; *Morgan*, at 596.) We hold that the trial court's finding is not contrary to the manifest weight of the evidence.

■■ The third area in need of resolution is did the defendant request to call his family and exercise his right to communicate with them, pursuant to section 103—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 103—3), which provides that persons arrested shall have the right to communicate with a member of their family by making a reasonable number of telephone calls within a reasonable time after arrival at the first place of custody. Assuming the trial judge resolved this conflict and found that defendant requested permission to call his family, the fact that his request was ignored prior to his confession is not, per se, dispositive of the issue of voluntariness. (*People v. Glanton* (1975), 33 Ill. App. 3d 124, 142, 338 N.E.2d 30.) There is testimony that he was advised of his rights several times, that he was willing to make a statement, and that he was not physically abused. Viewing the total testimony, and assuming he did request to call his family, we cannot find that the trial court's finding of voluntariness was against the manifest weight of the evidence.

With respect to the second issue, the State argues that defendant failed to raise the contention that he was arrested without probable cause, either at the hearing on the motion to suppress, during trial, or in a post-trial motion, and, therefore, the issue is deemed waived. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 246-47, 255 N.E.2d 432; *People v. Moore* (1969), 43 Ill. 2d 102, 106, 251 N.E.2d 181.) The State alternatively argues that the arresting officers had probable cause to arrest the defendant because they had reasonable grounds for believing that the person being arrested had committed a criminal offense. *People v. Wright* (1969), 42 Ill. 2d 457, 459, 248 N.E.2d 78.

The facts show that defendant did raise the issue of lack of probable cause for arrest at the motion to suppress hearing. First, defense counsel attempted to examine Officer Sherry with respect to this issue, but his questioning was stopped. Secondly, defense counsel moved to quash the

arrest, which was summarily denied. The trial judge at the motion to suppress hearing, however, did not commit reversible error because it was shown at the trial that the arresting officers had probable cause to arrest the defendant.

■■ Whether probable cause for an arrest exists in a particular case depends on the totality of the facts and circumstances known to the officers when the arrest is made. (*People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280.) The police knew the description of the perpetrator's car; that is, a 1962 to 1964 four-door beige Cadillac. The arrest took place 8 days after the robbery when the police saw the defendant getting into a 1964 goldish-brown four-door Cadillac which had no license plates and no city vehicle sticker. The closeness of the description to defendant's car and the absence of license plates and vehicle sticker established probable cause to arrest the defendant.

■■ Relating to the third issue raised, the defense argues that Mr. Donalson's confession was insufficient to support the conviction because it was not sufficiently corroborated by evidence outside the confession. A confession is insufficient to support a conviction without corroborating evidence (*People v. Melquist* (1962), 26 Ill. 2d 22, 28, 185 N.E.2d 825), but the corpus delicti need not be proved beyond a reasonable doubt exclusively by evidence *aliunde* the confession or admissions of the accused. (*People v. Perfecto* (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258; *People v. Gavurnik* (1954), 2 Ill. 2d 190, 194, 117 N.E.2d 782.) If there is evidence of corroborating circumstances which tends to prove the corpus delicti and corresponds with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved in a given case. (*Perfecto*, at 229; *Gavurnik*, at 194.) The test is whether the whole evidence proves the fact that a crime was committed and the accused committed it. *Perfecto*, at 229; *Gavurnik*, at 194.

■■ Several facts elicited at trial corroborate the defendant's confession. The defendant confessed to shooting the attendant at the Martin station located at Roosevelt and Independence on January 21, 1972. Jones, the attendant, was fatally wounded at that location on that day. The defendant admitted that he used the weapon that had been issued to him by the Lillard Detective Agency, a .38 Special Smith & Wesson pistol. Jones was killed by a pellet from a Smith & Wesson pistol. On the evening of the shooting, the perpetrator's vehicle was described as a 1962 to 1964 four-door beige Cadillac by an eyewitness, Mr. Hawkins. When the defendant was arrested, he was driving a gold 1964 four-door Cadillac which he had owned for 3 months. The evidence adduced at trial, including the circumstantial evidence and the defendant's confession, taken as a whole, proves that the crimes of murder and

attempt armed robbery were committed and that Mr. Donalson committed them. Therefore, we hold that his confession was sufficiently corroborated. The recent case of *People v. Holmes* (1977), 67 Ill. 2d 236, ___ N.E.2d ___, further supports our holding. The court noted, citing *People v. Morcutt* (1970), 44 Ill. 2d 256, 263:

> "' * * * While a conviction cannot be based on a confession alone, the other evidence in the case need not be sufficient by itself to connect the defendant to the offense. [Citations.] It is enough if the other evidence * * * tends to show that a crime did in fact occur [citation] * * *.' " *People v. Holmes* (1977), 67 Ill. 2d 236, ___ N.E.2d ___.

Concerning the final issue raised, defendant contends that his conviction for attempt armed robbery must be vacated because it arose out of the same course of conduct, in which case judgment should be entered on the greater offense and vacated on the lesser offense. (*People v. Whittington* (1970), 46 Ill. 2d 405, 409-10, 265 N.E.2d 679.) The State argues that separate convictions and separate sentences are permissible because the two offenses arose from separate though closely related acts. *People v. Moore* (1972), 51 Ill. 2d 79, 87-88, 281 N.E.2d 294.

■■ It appears from the record that the charged offenses resulted from a single course of conduct during which there was no substantial change in the nature of the criminal objective. Before the recent case of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, it was well established that where the same course of conduct of a defendant resulted in more than one offense, he could be convicted and sentenced only for one, with the sentence limited to the penalty for the most serious of them, and any verdict or finding of guilty on which sentence was not imposed was to be vacated. (*People v. Lilly* (1974), 56 Ill. 2d 493, 495-96, 309 N.E.2d 1; *People v. DePratto* (1976), 36 Ill. App. 3d 338, 342, 343 N.E.2d 628; see Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4.) According to *King*, when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered. Although *King* has limited the established rule, it has not affected that portion of the rule which dictates that where the same course of conduct of a defendant resulted in more than one offense, any verdict or finding of guilty for an offense on which sentence was not imposed must be vacated.

Because Mr. Donalson received no sentence on his conviction for attempt armed robbery, his conviction for this offense must be vacated. The conviction and sentence for murder is proper as it stands.

For the foregoing reasons, the judgment of the circuit court of Cook County finding the defendant guilty of murder is affirmed, and its

judgment finding the defendant guilty of attempt armed robbery is vacated.

Affirmed in part, vacated in part.

DIERINGER, P. J., and ROMITI, J., concur.