THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES TANKSON, SR., Defendant-Appellant.

First District (3rd Division)    No. 79-875

Opinion filed December 31, 1980.

C. I. Harris and Charles B. Evins, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, James Tankson, Sr., was charged with arson and murder. A jury found him guilty of both crimes, and the court sentenced him to seven years for arson and 20 years for murder, the sentences to run concurrently. On appeal defendant contends that the trial court erred in failing to suppress his written statement, that the trial court committed reversible error in refusing to conduct an evidentiary hearing on the admissibility of the written statement, and that he was not proved guilty beyond a reasonable doubt.

On May 29, 1973, at approximately 3:50 a.m., a fire occurred in an apartment building located at 2336 West Monroe Street in Chicago. Leroy Tankson, defendant's son, died in the fire. A few hours later, defendant was arrested and taken to the police station. At 3 p.m. on the same day, defendant gave the inculpatory written statement at issue. After defendant pleaded not guilty to the charges, he was adjudged unfit to stand trial and was admitted to the Department of Mental Health. A psychiatric evaluation later found him competent to stand trial and, on October 11, 1974, a jury found him competent to stand trial.

Prior to trial, defendant filed a motion to quash the arrest and suppress evidence. He argued that his warrantless arrest was made without probable cause and was therefore illegal, and that the statement was obtained as a result of the unlawful arrest.

On October 8, 1976, a hearing on the motion was conducted before Judge Matthew Moran. Officer Franklin Smith of the Chicago Police Department testified that at the scene of the fire a fire marshal pointed out five places on the third floor where fires had been set. The marshal also showed the police gasoline-soaked rags and a plastic container with gasoline residue was found at the scene. Defendant's daughter told Smith that she had seen her father at the apartment on the previous day and that, on several occasions, he had threatened to set the apartment on fire. Two other children of defendant voiced suspicions that the fire had been set by their father. Smith and his partner, L. Walton, went to defendant's place

of employment, where they waited for defendant. When defendant arrived at 6:35 a.m., the police officers identified themselves and told him his son had been killed in a fire which may have been caused by arson. They asked him to accompany them to the police station for questioning, and he agreed. They arrived at the station at approximately 7 a.m.

Upon their arrival, defendant was taken to an interrogation room where he was given his *Miranda* warnings. Defendant was then questioned intermittently about his whereabouts at the time of the fire. He first indicated that he had been at a girlfriend's home. Between 8:30 and 9 a.m., Smith telephoned the woman while another officer went to interview her in person. No further questioning occurred until 11 a.m., at which time the officers informed defendant that his girlfriend said he left her home early in the morning. Defendant then offered another account of his whereabouts. While defendant's alibis were investigated, he was left alone and not questioned. Defendant remained seated in the room without constraints. At 3 p.m., defendant signed the inculpatory statement challenged here.

At the completion of the hearing, Judge Moran concluded that the police did not have probable cause to make the arrest. The matter was continued to afford the State an opportunity to demonstrate that the statement was obtained independently of the unlawful arrest.

On November 29, 1976, having reviewed Officer Smith's testimony and heard arguments of counsel, Judge Moran found that the written statement was voluntary and denied the motion to suppress. Applying the standards established in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, to the facts presented, the judge reasoned that the statement was admissible because eight hours had elapsed between the arrest and incriminating statement; the police investigation of defendant's alibis constituted intervening acts of significance; defendant was questioned in a room rather than a cell; and the police conduct was not a flagrant violation of defendant's rights.

Trial began on November 28, 1977, before Judge Vincent Bentivenga. Defense counsel presented an amended motion to suppress urging that Judge Moran had ruled on the voluntariness of the statement but had not considered whether the statement was a fruit of the illegal arrest. After reviewing the transcript of the previous hearing, Judge Bentivenga noted that Judge Moran had examined and applied the standards announced in *Brown v. Illinois*, and had determined that the statement was separate and severable from the arrest. Judge Bentivenga thus followed the previous ruling on admissibility and denied defendant's motion to suppress.

On November 30, 1977, defense counsel disclosed that on the previous day, the State tendered a memorandum of an oral statement purportedly made by defendant to an assistant State's Attorney at 9 a.m.

on the day of his arrest. Its existence was not known to defense counsel or to the prosecution at the time of the earlier suppression hearing. Defense counsel moved to suppress the 9 a.m. statement and to relitigate the admission of the 3 p.m. statement in light of this newly discovered evidence.

At the hearing on the admissibility of the first statement, Assistant State's Attorney Paul Kayman testified that at approximately 9 a.m. he conversed with defendant at the police station. Prior to the oral statement, Kayman advised defendant fully of his *Miranda* rights. Defendant indicated that he had been treated fairly and had not received any threats or promises.

After hearing Kayman's testimony, the court found that the State had not sufficiently established a break in circumstances between the illegal arrest and oral statement, and granted the motion to suppress the 9 a.m. statement. The court refused, however, to exclude or relitigate the 3 p.m. statement, reasoning that the evidence of the first statement did not affect Judge Moran's earlier ruling. Further, the court refused to transfer the matter back to Judge Moran for reconsideration, observing that both judges had followed the same guidelines set forth in *Brown v. Illinois* in reaching their decisions.

Defendant contends that Judge Moran in the initial proceeding erred in failing to suppress the written statement allegedly obtained through exploitation of his unlawful arrest.

■■ The illegality of an arrest will not *per se* render inadmissible a statement made by an accused subsequent to the arrest. (*People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752.) Once defendant establishes the illegality of the arrest and its connection with the alleged fruit, the prosecution has the burden of establishing by clear and convincing evidence that the challenged statement was obtained by means sufficiently distinguishable to be purged of the primary taint. (*People v. Nash* (1979), 78 Ill. App. 3d 172, 397 N.E.2d 480; see *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) In *Brown v. Illinois*, the Supreme Court held that the giving of *Miranda* warnings, albeit an important factor in determining whether a confession has been obtained by exploitation of an illegal arrest, will not *per se* break the causal chain between the arrest and subsequent statement and is not the single factor to be considered. Other relevant factors include the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct.

Defendant urges that Judge Moran's findings represent a misapprehension and misapplication of the standards established by *Brown v. Illinois* and *Wong Sun v. United States*. He suggests that in finding the statement was voluntary, the court was addressing the fifth amendment

question of voluntariness without resolving the separate and distinct fourth amendment exclusionary issue. This contention overlooks the fact that in ruling on defendant's motion to suppress the statement as an inadmissible fruit of the illegal arrest, the court examined and specifically applied the factors announced in *Brown v. Illinois*. In view of this analysis, we believe the court properly considered the fourth amendment issue raised in defendant's motion.

Moreover, we believe *Brown v. Illinois* is factually distinguishable from the present case. In *Brown*, defendant was arrested without probable cause after police had broken into his apartment, searched it and awaited his arrival. Defendant was taken to the police station, where he was given his *Miranda* warnings, and questioned. Less than two hours after his arrest, defendant gave the first statement, and later that evening, he gave a second similar statement. The Supreme Court concluded that the State failed to establish sufficient attenuation to permit the introduction of the statements. The court noted that the first statement was separated from the arrest by less than two hours, that the second statement was the fruit of the first statement, and that there was no intervening event of significance. Moreover, the illegality had a quality of purposefulness. The arrest was investigatory in design and execution, and was effectuated in a manner apparently calculated to create surprise, fright and confusion.

■■ In the present case, the time between the arrest and written statement sought to be suppressed was far greater. Defendant was arrested at his place of employment. During questioning, defendant offered different accounts of his whereabouts at the time of the fire. While police investigation of his alibi accounts may not constitute an intervening circumstance as contemplated by *Brown*, there is no evidence to indicate that defendant was arrested as a pretext for some collateral, improper objective of the police. (See *People v. Fields*; see also *People v. Williams* (1978), 62 Ill. App. 3d 874, 379 N.E.2d 1222.) Moreover, the record fails to demonstrate any flagrant police misconduct designed to create surprise, fright or confusion. We therefore conclude that the evidence adduced at the initial suppression hearing demonstrates sufficient attenuation between the arrest and written statement to render the statement admissible.

Defendant next contends that Judge Bentivenga committed reversible error in refusing to conduct an evidentiary hearing on the admissibility of the 3 p.m. statement, or alternatively, to transfer the matter to Judge Moran for reconsideration, upon discovery of the 9 a.m. oral statement.

After conducting a hearing on defendant's motion to suppress the 9 a.m. statement, the court found a lack of attenuation and suppressed the statement. The court concluded, however, that the evidence concerning

the first statement did not affect Judge Moran's ruling on admissibility of the second statement. Defendant maintains that, having found the first statement to be the fruit of defendant's illegal arrest, it follows that the second statement should have been suppressed as a product of the first inadmissible statement.

In *People v. Andrus* (1976), 37 Ill. App. 3d 533, 346 N.E.2d 435, we rejected any *per se* test which would exclude a second statement simply because the first one was inadmissible. After noting that no evidence had been introduced at the hearing on the motion to suppress to indicate that defendant had given the second statement because he had made the first, we concluded that the statement was properly admitted. See also *People v. Burris* (1971), 49 Ill. 2d 98, 273 N.E.2d 605; *People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.

In making the argument that the second statement should have been suppressed as the product of the first statement, defendant relies on *Brown v. Illinois, People v. Raddatz* (1968), 91 Ill. App. 2d 425, 235 N.E.2d 353, and *People v. Riszowski* (1974), 22 Ill. App. 3d 741, 318 N.E.2d 10. All are distinguishable from the present case. In *Brown*, the court reasoned that the fact that defendant had given one statement and cooperated with the police with the anticipation of leniency, bolstered the pressures for him to give the second statement. Here, there was no testimony of promises, threats or mistreatment. Additionally, the fact defendant introduced different alibi accounts after making his first inculpatory statement tends to refute any contention that he felt pressured to give the second statement. In *Raddatz*, without benefit of the *Miranda* warnings, defendant orally confessed to having committed the offense. Shortly thereafter, having been given his warnings, defendant gave a written statement substantially the same as the oral one. At a hearing on the motion to suppress the statements, defendant testified that he believed the oral statement had conclusively established his guilt. The inadmissibility of the first statement was conceded; the second statement was held inadmissible. In the present case, defendant never offered any evidence to show that he made the second statement because he had already given the first statement. In *Riszowski*, this court held that a second confession, following shortly after an oral confession, was erroneously admitted. We reached that conclusion because of the lack of any appreciable time lapse between the confessions, the fact that the statements were given to the same police officers, and the continuity of defendant's custody. Here, six hours elapsed between the two inculpatory statements. And during that time, defendant offered various accounts of his whereabouts which were investigated and discredited.

■■ Having thus reviewed the evidence adduced at the suppression

hearings, we do not believe that the existence of the oral statement rendered the subsequent written statement inadmissible. Accordingly, under the circumstances, we find that the trial court did not err in refusing to conduct another evidentiary hearing or transfer the matter for reconsideration. We conclude that the inculpatory written statement was properly admitted into evidence.

Defendant finally contends that he was not proved guilty beyond a reasonble doubt because the State failed to establish the *corpus delicti* by evidence outside his statement. He specifically argues that the State never proved that the fire in question was caused by arson or that he committed the offense. Because of the nature of the argument, it is not necessary to set forth the trial testimony in detail.

In his written statement which was introduced at trial, defendant stated that at the time in question he entered the apartment and picked up a plastic bottle containing gasoline. Defendant's son approached and chased defendant around the table, threatening to throw him out. When defendant picked up a baseball bat, the son left the room. Defendant thought his son had gone to get a gun. In the course of moving around the table, defendant spilled some gasoline. Defendant lit a match, threw it to the floor, and left the room. He closed the hall door to keep his son from following him. When defendant entered the bedroom into the rear apartment, he accidentally spilled more gasoline. He also accidentally spilled gasoline trying to place the bottle in a closet. Defendant then threw the bottle into the backyard, and departed through the rear bedroom.

Defendant's wife testified that in a conversation with defendant six days before the fire, he had threatened to kill their son and to set the apartment on fire. Defendant's daughter testified that she locked the entrance door to the apartment that evening, and that it was still locked when the family attempted to reach the decedent. Defendant's other son testified that defendant had a key to the entrance door. Investigator John Bickler of the Chicago Police Department, an arson expert, testified to the existence of five separate fires in the third floor, all set with the use of an accelerant. He also testified concerning an unburned pattern in the linoleum which revealed that an object had been lying on the floor before a combustible liquid was poured around it. Officer Walton testified that the plastic bottle was found in the backyard.

■■ A confession uncorroborated by any evidence is insufficient to support a conviction. (*People v. Melquist* (1962), 26 Ill. 2d 22, 185 N.E.2d 825, *cert. denied* (1963), 372 U.S. 967, 10 L. Ed. 2d 130, 83 S. Ct. 1093.) Yet, the *corpus delicti* need not be proved beyond a reasonable doubt exclusively by evidence *aliunde* the admissions or confession of the accused. (*People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258.) If

there is evidence of corroborating circumstances which tends to prove the *corpus delicti* and corresponds to the circumstances related by the accused, both the circumstances and confession may be considered in determining whether the *corpus delicti* is proved sufficiently. (*People v. Donalson* (1977), 50 Ill. App. 3d 678, 365 N.E.2d 658.) The test is whether the evidence proves that a crime was committed and that the accused committed it. *People v. Donalson.*

■■ We believe the foregoing recitation of corroborating circumstances, together with defendant's statement implicating himself, are sufficient to prove that the crimes of arson and felony murder were committed and that defendant committed them. Although Investigator Bickler never expressly stated that the fires were the result of arson, his testimony was sufficient to justify the conclusion that someone had entered the apartment, deliberately poured gasoline in five different places, and lit it. Defendant was proved guilty beyond a reasonable doubt.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.