THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* KIRK VOLLRATH, Defendant-Appellee.

Third District    No. 80-525

Opinion filed April 30, 1981.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Kenneth M. Collinson, of Milan, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Kirk Gustav Vollrath, was arrested and charged with unlawful possession of weapons for possessing a switchblade knife. (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(1).) The trial court granted the defendant's motion to suppress, and the State appealed.

The defendant was the first witness to testify at the suppression hearing. His testimony established the following:

At approximately 9 p.m. on July 25, 1980, the defendant and a friend were walking near the horse and cattle barn at the Rock Island County Fairgrounds. A marked squad car containing two uniformed officers stopped 10 to 15 feet away from the defendant. One of the officers told the defendant to "Stop," approached him from behind, and patted him down. Neither officer asked the defendant his name nor made any attempt to determine what he was doing in the area. The patdown produced a switchblade knife which had been in the defendant's right front pocket. It is that knife which the defendant sought to suppress as the result of an illegal search.

A second squad car pulled up, and the two officers who had frisked the defendant walked to the second car to converse with the officer in it. They returned to the defendant and asked for identification. He gave them his driver's license, and the two officers returned to the second squad car where they called in the defendant's identification on the car radic and conversed with the other officer for a period of 10 to 15 minutes. Then they returned to the defendant, placed his hands on the police car, spread his legs, searched him again and handcuffed him. Throughout this period of time nothing was said to the defendant. Only after he was handcuffed was he told that he was under arrest.

On cross-examination, the defendant admitted that two nights prior to the instant incident, he had been involved in a scuffle with four other young men at the fairgrounds and had spoken with officers at the fairgrounds on that date. He had also been to the fairgrounds the night before his arrest.

Investigator Mike Grchan of the Rock Island County Sheriff's Department was the second witness. He testified that on the night in question, Chesley Wainwright, a citizen, reported to him that the defendant, described by Wainwright as being a "rather large kid, over 6 foot tall" and wearing a blue shirt with white stripes, had a knife in his hand. Investigator Grchan told Wainwright that he knew who the subject was, because he had told him about 15 minutes earlier to return to the main part of the fairgrounds from an area that was designated for campers only. Grchan confirmed with Wainwright that the knife was a switchblade and that it was in the defendant's possession.

Two squad cars drove to the area of the fairgrounds where the defendant, who was dressed in blue jeans and a blue terry cloth shirt, was located. Deputy Gary Hoskins of the Rock Island County Sheriff's Department, who had been with Grchan when he talked to Chesley Wainwright, got out of his vehicle, approached the defendant from behind and immediately frisked him. The switchblade was found in the defendant's right front pants pocket. Investigator Grchan testified on direct examination that the defendant's arrest was made at this time. However, on both cross-examination and redirect examination, Investigator Grchan testified that a 10- to 15-minute delay ensued between the first search of the defendant and the second search, which culminated in the defendant's arrest. This account coincided with that of the defendant.

Deputy Hoskins was the last witness to testify. His testimony was substantially identical to that of Investigator Grchan and revealed no facts contrary to those testified to by the defendant.

In granting the defendant's suppression motion, the trial judge reasoned as follows:

"THE COURT: Well, the Court has heard evidence both in support of the motion and evidence contrary to the motion as presented. The evidence shows to this Court one marked discrepancy in the procedures that are necessary to effect a proper seizure of evidence. Court refers to Chapter 38, Section 107—14 which states that 'a peace officer may, after having identified himself as a peace officer, stop any person in a public place', which is the situation we have here. From the evidence this Court has heard, the officer, Deputy Hoskins, came up behind this man and immediately conducted the search without anything being done prior. By way of law, it was necessary for him to identify himself as a police officer and then conduct a search. If the Court is evaluating the evidence properly, the officer came up behind the man and without any further ado, without any other preliminary matters, began to search the defendant. This is contrary to the requirements of Section 107—14 of Chapter 38. For that reason, in and of itself, the Court will allow the motion to suppress, which in this case was a switchblade knife. I might comment further that the State has indicated that the officer was justified because of the danger that existed to the officer. As the evidence presented to the Court, there was more than one armed officer involved, and this was a young man with a knife in his pocket. It wouldn't appear there was any immediate danger to the officer's person; so even if the search were held to be lawful—I mean, that is, if there was a lawful arrest—the search still was not justified by any impending danger to the particular police officers involved. The ruling of the

Court will be that the motion to suppress evidence will be allowed."

We agree with the trial court's reasoning and conclusion. The "stop and frisk" doctrine first enunciated in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, has been codified in Illinois in sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963. (*People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.) Those sections provide as follows:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped.

❄ ❄ ❄

When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." Ill. Rev. Stat. 1979, ch. 38, pars. 107—14 and 108—1.01.

These provisions have been interpreted to mean that specific and articulable facts and circumstances must exist at the time a police officer acts pursuant to the statute to render his actions reasonable. The facts and circumstances must lead to the conclusion that a situation confronting an officer is so far removed from the ordinary that any competent police officer would be expected to act quickly to maintain the status quo, rather than to observe the situation further. *People v. McGowan* (1977), 69 Ill. 2d 73, 78, 370 N.E.2d 537, 540, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.

In the case at bar, facts and circumstances existed which justified a section 107—14 stop. However, neither the spirit nor the letter of that section was observed. The statute plainly requires that a peace officer first identify himself as such before detaining and questioning someone. Although the officers here were dressed in uniforms and pulled up in a squad car, they failed to specifically identify themselves as peace officers, a failure which could easily have been remedied. Instead, they merely

yelled "Stop" and quickly approached the defendant from behind and proceeded to pat him down. No temporary questioning of any type occurred. For this reason, the requirements of section 107—14 were not met. The stop and frisk statutory provisions are not intended to provide legal justification for any patdown searches police officers may wish to conduct when those searches are conducted without attempts to comply with the statute authorizing the initial stop.

Our determination that the officers' actions in stopping the defendant violated the statutory provisions of section 107—14 obviates the need to examine whether the search was justified pursuant to section 108—1.01. That section permits a search where the peace officer reasonably suspects that he or another is in danger of attack. However, without making a final determination on the issue and with all due respect for the practical exigencies forced on police officers in their everyday life, we question whether the defendant, armed with a switchblade, posed a danger of imminent attack to three armed police officers.

The defendant admits in his brief that specific and articulable facts existed which justified a "stop and frisk" intrusion. He further admits that had the officers arrested him simultaneously with or immediately following the search, their actions would have been justified as a lawful search incident to arrest. The defendant further admits that the information provided by Chesley Wainwright presumably gave rise to probable cause for his arrest. See *People v. Hall* (1980), 90 Ill. App. 3d 1073, 414 N.E.2d 201, and *People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.

These admissions do not, however, void the defendant's stop-and-frisk argument, as contended by the State. In the case at bar, the defendant was not informed that he was under arrest until after the second search was conducted and he was handcuffed. This occurred approximately 15 minutes after the initial patdown search which produced the switchblade knife. Throughout this period of time, nothing was said to the defendant, who remained standing 10 to 15 feet away from the squad cars, unrestrained in any way. This sequence of events cannot be viewed as the type of single transaction evident in *Jones* and *Hall*. For this reason, we cannot view the actions of the law enforcement officers in the present case as a lawful arrest based on probable cause, accompanied by a lawful search incident to that arrest.

Accordingly, the suppression order of the Circuit Court of Rock Island County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.