THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES WATSON, Defendant-Appellee.

First District (5th Division)   No. 85—1530

Opinion filed June 20, 1986.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Jane H. Miller, Assistant State's Attorneys, of counsel), for the People.

Steven Clark and Sue Augustus, both of State Appellate Defender's Office, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with burglary and possession of burglary tools. (Ill. Rev. Stat. 1983, ch. 38, pars. 19—1, 19—2.) Following an

evidentiary hearing, Judge Nix granted defendant's motion to quash the arrest and suppress evidence and then denied the State's motion to reconsider. Judge Fiala subsequently denied the State's motion requesting an evidentiary hearing to show attenuation factors sufficient to allow admission of defendant's statement. On appeal, the State contends that defendant's arrest was proper where the police officer stopped him based on reasonable, articulable grounds and the search conducted for the officer's safety led to the discovery of burglary tools which provided the officer with probable cause to arrest defendant. The State further contends that defendant's confession was sufficiently distant in causal connection from his arrest so as to remove any taint of possible illegality.

At the suppression hearing before Judge Nix, defendant testified that on September 13, 1984, at approximately 3:30 a.m. he was arrested in the alley of the 800 block of Reba Place in Evanston, Illinois, although he was doing nothing illegal and he was shown no warrant for his arrest and search. At the time, he was wearing a red-and-black football jersey and army camouflage pants. He admitted that approximately 20 minutes earlier, he had ducked and fled at the sight of a squad car in the alley.

Officer Ralph Mieszala testified that on September 13, 1984, at approximately 2:30 a.m. he was driving a marked squad car when he saw someone standing next to an Oldsmobile parked in the alley of a residential area between Seward and Reba in Evanston. This person, whom the officer could not describe, ducked as the witness drove by. The officer then pulled up to the Oldsmobile and noticed that the windows were open and the glove box appeared to have been rifled because the contents were strewn over the front seat of the vehicle. However, there was no indication of forced entry into the vehicle, nor had there been any report to police of any automobile break-ins. The officer then began a foot search of the area with several other officers who stopped two subjects on a nearby street. Approximately 20 to 30 minutes after he first noticed the person by the Oldsmobile, the officer approached the opposite end of the same alley, and there he observed defendant walking out of a gangway into the alley. When the officer ordered defendant to stop, he complied. The officer then conducted a pat-down search of defendant which yielded a pair of long-nose pliers and a screwdriver inside a gym bag which could be converted into a windbreaker. Defendant had no weapons and appeared to be sober.

In granting defendant's motion to quash the arrest and suppress evidence, the trial court found that the arresting officer had reason-

able cause to believe that a crime had been committed. However, he further found that because the officer had no description of the person who fled, the only circumstances linking defendant to the crime was that it was 2:30 a.m. and that after a pat-down, he had a screw driver and pliers in his pocket. The trial court therefore concluded that there was insufficient basis for arresting defendant.

The trial court subsequently denied the State's motion to reconsider or, in the alternative, to determine that defendant's subsequent statements were not covered by the motion to quash. However, the trial court further indicated that if the State wished to present evidence on attenuation, it could file a motion before Judge Fiala, who was currently hearing the case due to the system of rotation of judges in the Second Municipal District.

The State then brought before Judge Fiala a motion for an evidentiary hearing on attenuating factors regarding defendant's confession. Judge Fiala heard arguments only, including the State's offer of proof as follows: while defendant was being transported to the station by another officer, Officer Mieszala continued to check vehicles in the alley and found a Datsun which had been forced open with a cassette recorder laying nearby; Mieszala determined that Mr. Van Doren was the owner of the Datsun and contacted him; Van Doren checked his vehicle and verified that a tape recorder was missing; Mieszala then confronted defendant with the burglary of the Datsun and defendant confessed about four hours after his arrest; he was then processed at which time outstanding warrants for him were discovered. Defendant also made an offer of proof as follows: Officer Mieszala's report shows that defendant was first questioned by Officer Ersler once in the station and gave an oral admission; and at the preliminary hearing Officer Ersler testified that he interrogated defendant within one-half hour after arrival at the police station.

Judge Fiala then denied the State's motion for an evidentiary hearing on attenuation, finding that the State's offer of proof was insufficient. As to inevitable discovery, the trial court stated that its ruling might have been different if the officer had been aware of the outstanding warrants before defendant made his statement.

■■■ On appeal, the State first contends that defendant's arrest was proper where the police officer stopped defendant based on reasonable, articulable grounds and the search conducted for the officer's safety led to the discovery of burglary tools which provided the officer with probable cause to arrest defendant. We do not agree.

A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Winters*

(1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299; *People v. Blevins* (1983), 118 Ill. App. 3d 221, 226, 454 N.E.2d 802.) While it is clear that an officer may stop and detain an individual for temporary questioning even without probable cause, both the case law and the Code of Criminal Procedure of 1963 require that an officer be able to reasonably infer from the circumstances that the individual is committing, is about to commit or has committed a criminal offense. (Ill. Rev. Stat. 1983, ch. 38, par. 107—14; *People v. Mills* (1983), 115 Ill. App. 3d 809, 814, 450 N.E.2d 935.) In determining whether a stop is reasonable, an objective standard is employed, that is, whether the facts available to the officer warrant a person of reasonable caution to believe that the action taken was appropriate; a mere suspicion or hunch is not sufficient. *People v. Fox* (1981), 97 Ill. App. 3d 58, 62, 421 N.E.2d 1082.

The State cites *People v. McGowan* (1977), 69 Ill. 2d 73, 370N.E.2d 537, in support of its argument. However, there, two officers observed the defendant and another man, both of whom were wearing black clothing, emerging from a commercial/industrial area around 1 a.m. At a hearing to suppress the gun which the officer found during a pat-down search of defendant, the officer testified that he stopped the men because of their black clothing, the time of night and his knowledge that burglary was not uncommon in that neighborhood. The supreme court, noting that this was a close case, affirmed the denial of the motion to suppress.

Although the defendant in this case was similarly stopped in the early morning hours, he was not stopped in an "otherwise deserted commercial and industrial area," but was stopped in the alley of a residential area along which cars were parked. The evidence further showed that police had stopped other suspects on the street. Moreover, unlike the facts in *McGowan*, defendant was not dressed in "highly unusual" black clothing but rather was dressed in street clothes, and there was no evidence in the record that the officer was aware that burglary or any other crime was common in that area. In this case, the only articulable facts and circumstances given by the officer to link defendant to the crime of rifling through the glove box of the Oldsmobile were that defendant was found walking in the same alley approximately one-half hour later. As the supreme court noted in *People v. McGowan* (1977), 69 Ill. 2d 73, 78, 370 N.E.2d 537, 540, the facts and circumstances, viewed as a whole, "must lead to the conclusion that the situation confronting the police officer is so far removed from the ordinary that any competent police officer would be expected to act quickly to maintain the status quo, rather than to observe the situation further." See *People v. Vollrath* (1981), 95 Ill. App.

3d 866, 869, 420 N.E.2d 760.

The State further cites *People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327. However, there, the police not only were following up on a tip that there was man with a gun in a tavern, but they also had information from a patron that the defendant in that case was the troublemaker. In contrast, the facts articulated here by the arresting officer show that the crux of his suspicion that defendant was the "troublemaker" was that he happened to be in the alley approximately one-half hour after the crime was discovered.

In addition, the fact that an officer has reason to stop a citizen does not necessarily justify the further intrusion of a search for weapons; the officer may conduct a pat-down search only if he has reason to believe that he is dealing with an armed and dangerous individual. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327.) Under section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 108—1.01), the officer need only have the reasonable belief that either his safety or that of others is in danger. *People v. Smithers* (1980), 83 Ill. 2d 430, 435, 415 N.E.2d 327.

We are not convinced that it was reasonable for the arresting officer to suspect that he was in danger of attack. In *People v. McGowan* (1977), 69 Ill. 2d 73, 79, 370 N.E.2d 537, the supreme court held that where the officer was aware that burglary was common in the neighborhood, it was reasonable for the officer to suspect that he was in danger of attack because it is not unlikely that a person engaged in stealing would arm himself against the possibility that another person would appear unexpectedly and object strenuously. However, in this case there was no testimony that burglary was common in the area, nor was the officer aware of any evidence that a burglary had been committed, but rather at the time of the arrest the officer was aware that the glove box in the Oldsmobile, which showed no signs of forcible entry and had its windows open, had been rifled.

Moreover, even if the arresting officer was justified in conducting a stop and frisk in this situation, neither the spirit nor the letter of section 107—14 (Ill. Rev. Stat. 1983, ch. 38, par. 107—14) was observed. In this case, the officer did not conduct any type of temporary questioning but merely ordered defendant to stop and proceeded to search him. See *People v. Vollrath* (1981), 95 Ill. App. 3d 866, 869-70, 420 N.E.2d 760.

Moreover, even if we were to accept the State's argument that the officer stopped defendant based on articulable facts and circumstances and was entitled to search defendant, we would still find that the trial court did not commit manifest error in finding that the offi-

cer did not have probable cause to arrest defendant.

■■ ■ Probable cause for purposes of arrest is present when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605; *People v. Gholston* (1984), 124 Ill. App. 3d 873, 882, 464 N.E.2d 1179.) In this case, following the stop and frisk, the only circumstances linking defendant to the crime were that it occurred 30 minutes before the officer stopped defendant in the vicinity and that after a pat-down, he was found to have a screwdriver and pliers in his pocket. However, at the time of defendant's arrest, the only crime of which the arresting officer was aware was the rifling of a glove box in the Oldsmobile in which there were no signs of forcible entry and the windows were open. Under the circumstances of this case, we cannot conclude that the trial court's determination that the arresting officer had an insufficient basis for arresting defendant was manifestly erroneous.

The State further contends on appeal that defendant's confession was sufficiently distant in causal connection from his arrest so as to remove any taint of possible illegality. Defendant argues that this issue is not properly before this court and has moved to strike this contention because the State specifically limited its notice of appeal to the ruling on the motion to quash defendant's arrest and suppress evidence and expressly represented on the record that it would not appeal Judge Fiala's order denying the State a hearing on attenuation.

■■ ■ Although the State did represent in the trial court that it would not appeal Judge Fiala's order denying the State a hearing on attenuation but would only appeal Judge Nix' order, it is generally accepted that a notice of appeal is to be liberally construed, and it is the briefs, not the notice of appeal itself, which specify precise points to be relied upon for reversal. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) Although the State's notice of appeal was taken from Judge Nix' ruling on defendant's motion to quash the arrest and suppress evidence, the State's argument that defendant's confession was sufficiently attenuated from his arrest so as to remove any taint of possible illegality is a point which can be fairly inferred from the notice because Judge Nix' ruling was based on defendant's motion to quash the arrest and suppress evidence. Defendant's motion specifically sought to suppress the introduction into evidence of any statement or utterances by the defendant during the detention following his arrest. We therefore deny defend-

ant's motion to strike this argument.

However, we cannot accept the State's argument that there was sufficient attenuation factors so as to permit the introduction of defendant's statement. The illegality of an arrest will not *per se* render inadmissible a statement made by an accused subsequent to the arrest. (*People v. Tankson* (1980), 92 Ill. App. 3d 328, 331, 415 N.E.2d 1218.) Once a defendant establishes the illegality of the arrest and its connection with the alleged fruit, the prosecution has the burden of establishing by clear and convincing evidence that the challenged statement was obtained by means sufficiently distinguishable to be purged of the primary taint. (*People v. Tankson* (1980), 92 Ill. App. 3d 328, 331, 415 N.E.2d 1218.) In *Brown v. Illinois* (1975), 422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261, the Supreme Court held that the giving of *Miranda* warnings, while an important factor in determining whether a confession has been attained by exploitation of an illegal arrest, will not *per se* break the causal chain between the arrest and the subsequent statement and is not the single factor to be considered. Other relevant factors include the temporal proximity of the arrest to the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct. *People v. Gabbard* (1979), 78 Ill. 2d 88, 95-96, 398 N.E.2d 574; *In re R.S.* (1981), 93 Ill. App. 3d 941, 944-45, 418 N.E.2d 195; *People v. Tankson* (1980), 92 Ill. App. 3d 328, 331, 415 N.E.2d 1218.

In this case, according to the State's offer of proof, defendant was advised of his *Miranda* rights before he was interrogated. However, this alone will not break the causal chain between the arrest and subsequent statement. As to the temporal proximity of the arrest and the confession, defendant's offer of proof showed that he made a statement soon after his arrest while the State's offer of proof showed that the statement was made approximately four hours after the arrest. Hence, on the basis of the record before us, the temporal proximity between the arrest and the statement is not clear. But the difference of a few hours is not significant (see *Taylor v. Alabama* (1982), 457 U.S. 687, 691, 73 L. Ed. 2d 314, 320, 102 S. Ct. 2664, 2667), and the degree of illegality at the time of the statement as measured by the extent of police misconduct, and the presence of intervening circumstances will usually determine whether the statement was tainted by a fourth amendment violation. *In re R.S.* (1981), 93 Ill. App. 3d 941, 945-46, 418 N.E.2d 195.

We are unable to accept the State's argument that Officer Mieszala's investigation and discovery of the burglary of the Datsun

was an intervening event which was totally unrelated to defendant's arrest. Moreover, the illegality in this case had a quality of purposefulness as the arrest appeared to be investigatory in design and execution. (Compare *People v. Tankson* (1980), 92 Ill. App. 3d 328, 332, 415 N.E.2d 1218.) Under these circumstances, we cannot conclude that Judge Fiala's determination that the State's offer of proof was insufficient to show attenuating factors was incorrect.

Accordingly, we affirm the orders of the circuit court of Cook County. Orders affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.