THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD WORMACK, a/k/a Richard Womack, Defendant-Appellant.

First District (4th Division)    No. 79-306

Opinion filed November 26, 1980.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Ann L. Benedek, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Richard Wormack, was convicted of burglary and two counts of armed robbery following trial in the circuit court of Cook County. His oral motion for a new trial was denied, and he was sentenced to nine years' imprisonment. The defendant appeals from these convictions, contending that the warrantless entry by police into his apart-

ment to effectuate his arrest was unlawful and that therefore his arrest must be quashed and the evidence seized in his apartment must be suppressed. The defendant alternatively requests that the cause be remanded for further hearing on his motion to quash the arrest because the trial court erred in precluding inquiry into the time necessary to obtain a warrant.

At approximately 11 p.m. on February 23, 1977, two men burglarized the second floor apartment of Gwendolyn Hayes and robbed the occupants, Anita Hayes and Fred Miller. One man was armed with a pistol and the other man carried a shotgun. Seven fur coats, a television set, jewelry, a wallet and money were stolen.

At approximately 10 p.m. on February 24, 1977, Wilbur Lewis visited Gwendolyn Hayes at her home. Lewis had with him two rings which had been stolen from Hayes the night before. He told Hayes he had information concerning the identity of the offenders.

At approximately 11:15 that night Investigator McMahon, a Chicago police officer, received a report concerning Lewis' visit to Hayes. Shortly thereafter McMahon, Lewis, Gwendolyn Hayes, and Miller met at the police station. Lewis told the police he had obtained the rings while visiting a house on Claremont Street. At the house he saw "piles" of jewelry and six or seven fur coats. Persons he knew as Richard Coleman, Anthony Hooks and "Pee Wee" were present. Hooks and Coleman told Lewis that the jewelry and furs were the proceeds of a robbery which they committed. Lewis described Coleman. The description was similar to the description of one of the offenders that had been given by the victims of the robbery.

McMahon believed that Lewis was a reliable and dependable informant. He based this opinion on three factors: Lewis had the address of the home invasion; Lewis had in his possession certain items which were identified by Mrs. Hayes as proceeds of the robbery; and Lewis had a grudge against Anthony Hooks because eight years previously Hooks had shot Lewis in the head.

Between 12:30 a.m. and 2 a.m. on February 25, 1977, McMahon interviewed Gwendolyn Hayes and the robbery victims. Immediately thereafter McMahon, Lewis and several police officers proceeded to 505 South Claremont to arrest Anthony Hooks and Richard Coleman. There was no attempt to obtain an arrest or search warrant. Lewis pointed out the defendant's apartment to the police and explained how to gain entry.

McMahon went to the front door of the building and began knocking. Other police officers went to the rear door. For approximately five minutes McMahon knocked "very loudly" on both the outer front door of the building and the window to the defendant's apartment. He announced three times that he was a police officer. McMahon saw

someone look out of the window to the apartment. After knocking for two more minutes McMahon forced the outer door open. It led to a common entryway. He then knocked on the door of the apartment and announced his office. A young black woman opened the door. McMahon again announced that he was a police officer. According to McMahon the girl "didn't say anything, just turned around and walked back in the apartment, leaving the door open."

McMahon walked into the apartment and let the other police officers in through the rear door. He asked the three adult men in the apartment their names. They identified themselves as Anthony Hooks, Richard Wormack, and Darnell Wormack. Richard Wormack fit the description which Lewis had given of Richard Coleman and the description which the robbery victims had given of one of the offenders.

McMahon walked from the dining room to the living room in an effort to determine whether there were other men in the apartment who fit the description of Richard Coleman. He saw two rings and a man's white gold watch on the mantle in the living room. This jewelry matched the description given by Hayes of items taken in the robbery. Another officer found a watch under a pillow in the bedroom.

The State contends that the defendant's arrest was lawful because (1) a warrant is not required where the entry into a home is to effectuate a felony arrest and the police have probable cause, (2) even if a warrant is required notwithstanding probable cause, the entry here was justified by exigent circumstances, or (3) the entry here was made with the consent of one of the occupants of the apartment.

The State's first argument is foreclosed by the recent rulings in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543. Under these decisions, a warrant is required to support the entry into a private residence for the purpose of making a felony arrest even where there is probable cause, absent a showing of exigent circumstances.

⊛ 1 Nor are we persuaded by the State's argument that the entry into the Wormack apartment was consensual. Under *People v. Trull* (1978), 64 Ill. App. 3d 385, 389, 380 N.E.2d 1169, 1173, "the common entries and hallways of a locked apartment building are protected by the fourth amendment." The police officer here forced open the outer door of the apartment building. The entry was therefore not consensual notwithstanding that an occupant of the apartment opened the inner door.

We next consider the State's argument that under *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, the warrantless entry here was justified by exigent circumstances. In *Dorman* the following were enumerated as factors to be considered in determining whether exigent circumstances exist.

"First, that a grave offense is involved, particularly one that is a crime of violence * * * .

Second, and obviously inter-related, that the suspect is reasonably believed to be armed * * * .

Third, that there exist not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause * * * .

Fourth, strong reason to believe that the suspect is in the premises being entered.

Fifth, a likelihood that the suspect will escape if not swiftly apprehended.

Sixth, the circumstances that the entry, though not consented, is made peaceably. * * *

Another factor to be taken into account, though it works in more than one direction, relates to time of entry—whether it is made at night. On the one hand * * * , the late hour may underscore the delay * * * . On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness * * * ."
*Dorman*, at 392-93.

■■ We do not believe that this case presents the kind of exigent circumstances or urgent need which would justify the warrantless entry into Wormack's home under *Dorman*. The offenses were serious ones and there was probable cause to believe the defendant was the offender. However, there was no evidence that the suspects were armed either when Lewis saw them or at the time of the entry. The record does not disclose when Lewis saw the defendant at the Claremont address but it was apparently sometime prior to 10 p.m. on February 24, 1977. There was no evidence to support a "strong reason to believe" that the defendant was at the Claremont address at 2 a.m. on February 25, 1977, when the arrest was made. Similarly, there was no evidence concerning the likelihood that the suspects would flee the Claremont address during the time necessary to obtain a warrant. In order to enter, the police forced open the outer door of the apartment building. Concerning the time of entry, the fact that it was 2 a.m. "raises particular concern over its reasonableness." This is especially true as the arrest occurred in Cook County, where nighttime warrants are available.

In addition to its contention that there were exigent circumstances under *Dorman*, the State argues that the necessity for a warrant is excused here because Lewis told the police that the suspects were planning to distribute the robbery proceeds for sale. We do not believe that this fact excuses the necessity for a warrant. There is no evidence that the proceeds would be distributed for resale at 2 o'clock in the morning while the officers were obtaining a warrant. Further, the police could have posted

officers at the Claremont address while the warrant was being obtained and thereby prevented the suspects from removing the evidence.

■■ Because there were neither exigent circumstances excusing the necessity for a warrant nor consent to enter, we conclude that the entry into Wormack's home to effectuate his arrest was unlawful. Therefore, although the evidence recovered by the police was in plain view when seized, it must be suppressed. While police officers may lawfully seize articles which they reasonably believe constitute evidence of criminal activity and which are in plain view (*Warden v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642), the officer must view the evidence seized from a position where he has a right to be (*Harris v. United States* (1968), 390 U.S. 234, 19 L. Ed. 2d 1067,88 S. Ct. 992). Here, the entry into Wormack's apartment was unlawful, so the officers were not in a position where they had a right to be. Therefore, the seizure of the evidence was unlawful and the evidence must be suppressed. Since the entry was unlawful, it must also follow that Wormack's arrest be quashed.

Due to our disposition of this appeal it is not necessary to address the remaining issue raised by the defendant.

Accordingly, Wormack's arrest is quashed and the evidence seized in his apartment is suppressed. The judgment of the circuit court is reversed and the cause is remanded for proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

LINN, P. J., and ROMITI, J., concur.