(No. 56753.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DANIEL WINTERS *et al.*, Appellees.

*Opinion filed June 17, 1983.—Rehearing denied September 30, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Michael B. Weinstein and Ellen M. Flaum, Assistant Attorneys General, of Chicago, and Phyllis J. Perko and William L. Browers, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, of the Office of the State Appellate Defender, of Elgin (Mary Robinson, of counsel), for appellees.

JUSTICE CLARK delivered the opinion of the court:

On January 18, 1979, indictments were filed in the circuit court of Du Page County charging Kenneth H. Killian, Daniel B. Winters and Mark A. Van Roekel with multiple counts of robbery.

Each defendant moved to quash his arrest, to suppress all evidence seized from both the apartment in which the defendants were arrested and the car that the police had

observed being used in one of the alleged robberies, and to suppress the defendants' oral and written confessions.

Following suppression hearings on the defendants' motions, the circuit court of Du Page County, on December 23, 1980, entered orders suppressing all of the evidence, including the defendants' confessions, and quashed all of the arrests that occurred immediately after the entry into the defendants' apartment by the police officers.

The State appealed, and on April 20, 1982, the appellate court, in a Rule 23 order (87 Ill. 2d R. 23), affirmed the circuit court's rulings quashing the defendants' arrests, suppressing evidence seized from the defendants' apartment, and suppressing the defendants' oral and written confessions, finding that the arrests were the result of an illegal entry and that the items seized, as well as the defendants' confessions, were the fruits of the illegal entry. However, the appellate court reversed the order of the circuit court suppressing evidence seized from the car, in finding that none of the defendants had standing to contest the search of the car or seizure of those items. 105 Ill. App. 3d 1206.

We granted the State's petition for leave to appeal (87 Ill. 2d R. 315). The defendants are not contesting on appeal to this court the appellate court's finding as to that part of the order reversing the trial court's suppression of the evidence seized from the automobile.

In January of 1979, Officer Thomas Vitek of the Bensenville police department received information from a telephone informant that Kenneth Killian and two other individuals were responsible for robberies of Fotomat stores in the area of several Du Page County communities. Vitek knew the informant and knew that information previously given from this person had led to arrests in four or five instances. The informant indicated to Vitek that he was getting his information from an unidentified third party, whose reliability could not be attested to. According to the

information that the informant had, the individuals responsible for the Fotomat robberies lived in Lisle, Illinois, and drove a 1975 maroon-over-white Pontiac. Officer Vitek testified that, through the use of State records, he was able to ascertain that the vehicle was registered to a "Killian." As Vitek recalled, it could have been Ralph W. Killian. Kenneth Killian testified that the car belonged to his father.

A surveillance of the car was set up by the police departments of Lisle, Elmhurst and Bensenville early in the evening on January 4, 1979, on Beau Monde Lane in Lisle, Illinois, in the vicinity of the apartment complex in which the defendants lived. At about 6:30 p.m. officers observed two individuals drive the vehicle away from the Lisle apartment complex. The officers followed the car to a Fotomat store in the Lisle area. The officers then observed one of the passengers get out of the car and pull a knit hat over his face as he walked over to the Fotomat store. The subject under surveillance then knocked on the window (which was apparently used for normal business transactions) and went back to the car when the window was not opened.

After the car had left the vicinity of the Fotomat store, Officers Vitek and Millner went up to the window and asked if there had just been a robbery and learned that the employee had refused to talk with the masked man because the employee feared that he was going to be robbed. Other officers then followed the car as it proceeded back toward the apartment complex at which the surveillance had begun. The officers following the car next observed one of the passengers leave the car, enter and exit a White Hen Pantry store and then enter the Little Italian Restaurant. Shortly thereafter, the subject was seen running from the Little Italian Restaurant and getting into the car.

At this juncture, Officers Vitek and Millner were parked on a side street near the Little Italian Restaurant.

After seeing one of the subjects running toward the Pontiac under surveillance Officers Vitek and Millner proceeded to the apartment complex at which the surveillance began. Officer Vitek testified that en route he received a radio communication that the Little Italian Restaurant had just been robbed.

Officer Damico and his partner, Detective Busiedlek, had observed from their unmarked squad car one of the passengers emerge from the Pontiac, enter the White Hen Pantry and soon thereafter flee running from the Little Italian Restaurant. The radio dispatcher had then confirmed, upon Officer Damico's inquiry, that there had, as of that moment, been an armed robbery at the Little Italian Restaurant. The officers then observed the car pull away and followed it back to the apartment complex. While following the car into the complex, the officers lost sight of the vehicle for 10 to 15 seconds. When the officers regained the view of the car, it was parked and unoccupied.

The surveillance teams, six to 10 officers, gathered in the parking area and then entered the apartment building closest to where the car was parked and, in two elevator trips, went to the door of apartment 301. One of the officers testified that, while waiting for the second group to arrive, he heard voices through the door discussing splitting up money and saving enough money for bond.

In order to gain entry to the apartment, Officer Vitek knocked, and when defendant Winters asked who was there, the officer responded, "Mark, why weren't you at work today?" whereupon defendant Winters partially opened the door. How far the door was opened, whether there was a chain lock, and whether the chain lock was broken by the police depends upon what witnesses are believed. However, the trial court determined that the door was secured by a chain and was broken by the police.

The police entered the apartment with their guns drawn and quickly subdued defendants Killian and Win-

ters, directing the defendants to the floor and handcuffing them. Officer Millner then kicked in a bathroom door in the back of the apartment, apprehended defendant Van Roekel, and discovered some money in the bathroom.

While it is not clear exactly what happened in what sequence, at this point it appears that Van Roekel was handcuffed and brought into the living room with the other defendants.

It is clear that Killian signed a consent form approving the officers' search of the apartment and car. The defendants testified that a metal box in the bedroom was pried open and a money bag taken from the box. Killian testified that while he had a key, no one had asked him for it.

The defendants were interrogated at the apartment, where Killian and Winters confessed, and were subsequently questioned at the Lisle police station, where each defendant gave a written statement.

No weapons were found in the apartment. The police did not have arrest or search warrants.

The trial court, in suppressing the evidence and quashing the arrests, said:

> "One of the difficult things about this job is that sometimes you have to let guilty people get off free because the police departments engage in tactics such as are displayed here.
>
> With regard to Killian, the police had no more probable cause during their entire surveillance that day than they had when they formed the intent to take him in the apartment.
>
> They had plenty of time prior to that, if they had probable cause, to get the necessary warrant, and they didn't do it.
>
> During the testimony in this case I got the impression that the various villages and the officers from different villages were having a contest to see who could be more macho, breaking the chain off the door, searching without consent, prying open metal boxes."

Upon the State's motion for more definite findings, the trial court observed that it was shocked by the conduct of the police and commented, in denying the motion:

"If this conduct is to be condoned by a Court of law, I think we are returning to the status of 1939 Germany."

The State argues that the trial court failed to make sufficiently specific findings of fact in support of its suppression order and thereby frustrated the State in its appeal from that judgment.

Section 114—12 of the Code of Criminal Procedure of 1963 provides that "the [trial court] shall state the findings of facts and conclusions of law upon which the order or judgment is based." (Ill. Rev. Stat. 1979, ch. 38, par. 114—12.) In *People v. Riencke* (1980), 84 Ill. App. 3d 222, the appellate court correctly underlined the importance of such findings in facilitating review of the evidence relied upon and the reasoning of the trial court. 84 Ill. App. 3d 222, 224.

However, the absence of such findings does not require a remand. While we feel that a more specific statement of the factual basis upon which the trial court relied in reaching its conclusion should have been made, we must presume that in the absence of such express findings of fact the trial court credited only the testimony that supports its ruling. *People v. Holloman* (1970), 46 Ill. 2d 311; *People v. Haskell* (1968), 41 Ill. 2d 25.

As we begin our analysis, it is important to be mindful of the well-established rule in this State that a trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *People v. Holloway* (1981), 86 Ill. 2d 78; *People v. Conner* (1979), 78 Ill. 2d 525; *People v. Williams* (1974), 57 Ill. 2d 239, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

The trial judge did determine that despite police officers' testimony to the contrary the officers forced their way into the apartment, broke a chain lock from the door, searched

the apartment without consent, and in the course of that search pried open a locked metal box.

Those findings certainly provide a basis for us to presume that the court credited the defendants' testimony, at least as to the way the officers entered the apartment and conducted the search. While we would hope that in future cases that come before us for review the trial court's findings will be more specific, as to both findings of fact and conclusions of law, we are not compelled to remand here.

In reviewing the substance of the defendants' fourth amendment claims, we first address the issue of whether probable cause existed to make the arrests. The defendants agree that the police had probable cause to arrest the occupants of the car that they were watching once they had received confirmation that a robbery had occurred at the Little Italian Restaurant at approximately 7 p.m. on January 4, 1979.

The State asserts that having followed the car connected with the robbery of the Little Italian Restaurant back to the apartment complex, the police had probable cause to believe that both suspects were in the apartment at issue. We agree.

Testimony of several police officers indicates that they knew in what apartment Killian lived. The State asserts that it can be inferred that the information came from Officer Vitek's informant or from independent checking done by the police officers subsequent to the informant's tip.

We feel that such an inference is the only reasonable one to be drawn. When asked what led the officers to the specific apartment, Officer Damico responded that "[t]he information we received was that they lived at that apartment number." Other officers also testified that they had previous information as to what apartment Killian, Winters and Van Roekel were staying at in the building. While not directly adduced at the suppression hearing, we agree with the State that the reasonable inference is that the information was supplied by the informant or discovered by one of

the police officers in the subsequent investigation after Officer Vitek's conversation with the informant.

We next have to ask whether probable cause existed in the officers' going to apartment 301 based upon an informant's tip or on information gained as a result of that tip. For that determination we must look to *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. There are two parts to the probable-cause tests articulated in *Aguilar*: The first is the "basis of knowledge" part, which is concerned with the facts and circumstances showing that the informant knew that the person named has been or will be involved in criminal activity; the second is the "veracity prong," which is concerned with the facts and circumstances from which it was concluded that the informant was credible or his information reliable. 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *People v. Gates* (1981), 85 Ill. 2d 376, *cert. granted* (1982), 454 U.S. 1140, 71 L. Ed. 2d 291, 102 S. Ct. 997.

We must keep in mind that although Officer Vitek's informant had been shown to be reliable in the past, the informant did not have first-hand knowledge of the Fotomat robberies. There had been no showing that the unidentified third party who provided the informant with the information about the Fotomat robberies was at all reliable.

The actions of the two subjects driving the maroon-over-white Pontiac to the Fotomat, one masked subject approaching the window at the Fotomat and, finally, the running exit from the Little Italian Restaurant and confirmation that the restaurant had been robbed corroborated the informant's tip. The specificity of detail as to the activities that the occupants of the maroon-over-white Pontiac did engage in on the evening of January 4, 1979, satisfied the "basis of knowledge prong" (*Spinelli v. United States* (1969), 393 U.S. 410, 417, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584, 589-90; *People v. Gates* (1981), 85 Ill. 2d 376, 388, *cert. granted* (1982), 454 U.S. 1140, 71 L. Ed. 2d 291, 102

S. Ct. 997), while the course of events on January 4, 1979, showing that the informant's tip was reliable satisfied the "veracity prong" of the *Aguilar* test (*United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075; *Rutledge v. United States* (D.C. App. 1978), 392 A.2d 1062). Because the substantial corroboration of the informant's tip satisfied both prongs of the *Aguilar* test, we feel that the information as to the apartment number could be acted upon, since probable cause to proceed to apartment 301 had then been established. Furthermore, one of the officers overheard two voices from within apartment 301 talking about splitting up money and putting some away for bond purposes. Given the now corroborated tip, this was another indication that the parties had partaken in the robbery of the restaurant minutes earlier.

Just prior to the filing of this opinion the United States Supreme Court handed down its decision in *Illinois v. Gates* (1983), 462 U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317. In view of this very recent decision, strict adherence to the *Aguilar-Spinelli* test has been abandoned by the United States Supreme Court and the totality-of-circumstances approach has been substituted in its place. We believe that, whichever approach is undertaken here, probable cause did exist.

Without reviewing the facts again, it is clear that, in view of the totality of circumstances in the instant case, probable cause did exist to proceed to apartment 301.

Despite the finding by the trial court that the police officers broke the chain, we find that the officers' entry was reasonable given the circumstances of this case.

The exigent-circumstances exception to the warrant requirement applies where police officers enter an apartment in pursuit of an armed subject whom they have probable cause to believe committed a known offense. (See *People v. Abney* (1980), 81 Ill. 2d 159.) This is just such a case where police officers are acting to apprehend suspects in a genu-

ine emergency.

In *People v. Abney* this court held that a warrantless entry of the defendant's apartment to arrest the defendant was justified by exigent circumstances where police went to the apartment immediately after taking a statement from the victim of a beating who told them that about 1½ hours earlier the defendant had beaten him with an iron bar and pistol and had walked toward his home after the beating, and where the police knew the defendant lived at a particular address.

In *Abney* police officers were presented with an opportunity to quickly apprehend an armed suspect, and this court concluded that because there was need for prompt action, there was no deliberate or unjustified delay, and it was believed that the suspect had shown violent tendencies, exigent circumstances existed. *People v. Abney* (1980), 81 Ill. 2d 159, 169-71.

So, too, in the instant case, where the officers moved quickly to apprehend suspects they had reason to believe were armed and had just committed a robbery they had witnessed moments earlier, exigent circumstances existed to justify the entry into the defendants' apartment.

We have also said that the failure of the police to knock and announce their authority and purpose where exigent circumstances exist is not improper (see *People v. Ouellette* (1979), 78 Ill. 2d 511), and we find that the failure of the police to knock and announce their purpose was not improper here. The entry into the defendants' apartment was valid, and the subsequent arrests were legitimate and should not have been quashed.

We further find that the trial court's determination that the search of the apartment was conducted without consent was clearly in error.

It is firmly established that a search of the accused and the area within their immediate control, conducted incident to a lawful arrest, is valid. *Chimel v. California* (1969), 384 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

As to the search in the bedroom area, not within reach of the defendants, it is undisputed that defendant Killian signed a consent form to search the apartment, and there was no testimony that Killian was forced to sign such a consent form.

Finally, the defendants contend that the confessions must be suppressed as products of fifth amendment violations. It is apparent that *Miranda* warnings were given upon the police officers' entry into the apartment and waiver forms were signed when the written statements were taken at the Lisle police station. While defendant Van Roekel also claims he had told Officer Millner he wanted to see an attorney, there is no support for the contention in the record. We cannot agree with the defendants' suggestion that the oral and written confessions were not voluntarily given.

While the trial court's lack of specific findings has made appellate review more difficult than it should be, we, just the same, do find that the factfinder's order quashing the arrests and suppressing the evidence was manifestly erroneous. *People v. Holloway* (1981), 86 Ill. 2d 78.

The judgment of the appellate court affirming the quashing of the arrests of the defendants, suppression of the evidence seized in the apartment, and suppression of the oral and written confessions of the defendants is reversed. Because the appellate court reversal of the circuit court order suppressing the evidence seized from the car was not at issue here, that part of the appellate court judgment remains in effect. The judgment of the circuit court is reversed. The cause is remanded to the circuit court of Du Page County with directions to proceed in a manner consistent with this opinion.

> *Appellate court affirmed in*
> *part and reversed in part;*
> *circuit court reversed;*
> *cause remanded.*

164

JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the Supreme Court made it clear that warrantless arrests in a home are presumptively unreasonable and that in the absence of exigent circumstances the presence of probable cause is not sufficient to justify a warrantless arrest. Here the record contains no evidence to support a finding of probable cause that the occupants of the apartment were in any manner involved in the offenses mentioned in the informer's tip or in any subsequent occurrence, and there was no evidence of exigent circumstances.

Officer Vitek, who received the telephone tip, candidly admitted that the informant obtained his information from an unidentified third party to whose reliability he could not attest. The tip provided only the information that the suspect lived in Lisle and drove a 1975 maroon-over-white Pontiac. As it turned out, the automobile was not even owned by the defendant. It was, in fact, owned by his father.

The informant's tip referred to "Fotomat" robberies, with no information concerning locations or dates. There was nothing to connect these defendants to those robberies, and there was no robbery of a Fotomat on the night in question. One of the occupants of the Pontiac was in a restaurant for a very brief period, and it was then reported that the restaurant had been robbed. The police, in attempting to follow the vehicle, lost it in traffic, and when it was again seen it was unoccupied and parked in the lot of a large apartment complex.

There was no testimony concerning the source of the police information that Killian or any of the other defendants occupied the apartment where the search took place. There was no testimony which connected the individuals who occupied the automobile during the surveillance with

the apartment which the police entered. The efforts of the majority to bootstrap a "reasonable inference" fails because there is no evidence, and Officer Damico's comment concerning "the information received" does not serve as a substitute for evidence.

The record contains no evidence of exigent circumstances. There were at least 10 or 12 police officers in the surveillance teams, and there was no testimony to explain why officers could not have been stationed at the automobile and near the apartment to prevent an escape while search and arrest warrants were obtained. There is no testimony to indicate that an escape, if indeed one was possible or contemplated, could have been effected in any manner other than by use of the automobile, and obviously an escape would have been very easily prevented.

The majority states that the exigent-circumstances exception to the warrant requirement applies when police officers enter the apartment in pursuit of an armed subject whom they have probable cause to believe committed a known offense. As an abstract proposition this is probably true, but those are not the facts in this case. When the police went to the apartment they could hardly have been in "hot pursuit" because they could not possibly have known whether the individuals who they saw in the automobile outside the restaurant, and who were not identified, had entered the apartment.

The majority states, too, that the police moved quickly to apprehend suspects they had reason to believe were armed. Again, I do not quarrel with the abstract proposition, but there is no evidence which connects the occupants of the apartment with the robbery which the police had allegedly witnessed and as was made obvious by the search, the occupants of the apartment were not armed.

The circuit and appellate courts correctly decided this matter and I would affirm the judgment.

JUSTICE SIMON joins in this dissent.