THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARL L. MOTTON, Defendant-Appellee.

First District (1st Division)   No. 84—1161

Opinion filed December 30, 1985.

---

*This opinion was concurred in prior to the retirement of Presiding Justice Mejda from the court.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter Fischer, and Dana Crowley, Assistant State's Attorney, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This is a State appeal from an order of the circuit court granting defendant's motion to suppress evidence because defendant's warrantless residential arrest was conducted in violation of *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. The State contends that defendant's arrest was lawful, and alternatively it urges any taint from an unlawful arrest was dissipated before defendant made his incriminating statements.

Testimony at the evidentiary hearing conducted on defendant's motion showed that the body of Philip Anderson was found fatally

beaten near the southside Chicago lakefront on August 21, 1982. Detectives Steven Glynn and Brian Regan were assigned to investigate the matter that day. The undisputed evidence shows that late the following evening they received information that shortly before the victim had last left his residence he had received a telephone call from Virginia Dumas, the girlfriend of defendant. About 11 p.m. on August 22 police interviewed Dumas after picking her up at 6330 South Greenwood in Chicago. They had several conversations with her over a two- to three-hour span. During the final discussion in the early morning hours of August 23, she related that defendant had been robbed and believed that the victim had been one of the assailants. When she had told defendant that the victim was coming to see her at her job, defendant told her to permit the victim to continue to meet her so defendant would know what the victim was doing. She then told police that on the night the victim was killed, she and the victim were walking down the street when suddenly a man appeared brandishing a baseball bat and chased the victim into an alley. There the victim was confronted by defendant and several others. The victim was beaten and forced into a car. Dumas, defendant, the victim and others then drove to a beachfront area where defendant beat the victim with a club and several others struck him with a baseball bat. Dumas also told police that defendant, whom she had seen just prior to meeting the police that night, was staying at 6330 South Greenwood in Chicago. About 5 a.m. on August 23, several police officers arrived at that address, and in response to their knock, Mary Magee, an elderly woman who testified that defendant was her "adopted son," answered the door.

According to police they did not have their guns drawn when they identified themselves and explained their reason for being there. Ms. Magee then let them inside, and they arrested defendant in a second-floor bedroom. They had not obtained an arrest warrant because they believed that it would take five to six hours to obtain one.

Conversely, Mary Magee testified that when she had opened the door slightly in response to the police, they pushed their way inside with guns drawn and did not ask permission to search.

There is no dispute that after his arrest defendant was taken to the police station, arriving there about 5:15 a.m. Defendant was advised of his *Miranda* rights, and during the ensuing 15-minute conversation he did not make any incriminating admissions to the homicide but offered an alibi. An assistant State's Attorney arrived about 6:30 a.m., interviewed Virginia Dumas for about one hour, and then spoke to defendant. He advised defendant of his *Miranda* rights and

secured an incriminating oral statement after telling him that Dumas had disputed his alibi and linked him to the homicide; a written statement was then obtained after defendant was again advised of his *Miranda* rights. These statements were the subject of the suppression motion.

The trial court found that there was an adequate factual basis to establish probable cause for defendant's arrest. The court, however, concluded that the police entry into defendant's residence was by force, without invitation and not made under exigent circumstances. The court also found that defendant's incriminating statements were directly linked to his illegal arrest without a sufficient dissipation of the taint from that arrest. Therefore, the trial court granted defendant's motion to suppress.

■■ The State argues that the officers' entry into defendant's residence was proper because Ms. Magee invited them inside. (See *People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608.) Yet Ms. Magee's testimony indicated that police forced their way inside after she had slightly opened the door. The resolution of this matter depended upon the witnesses' credibility. Upon examination of the record we cannot say that the trial court's evaluation was improper. (See *People v. Johnson* (1981), 99 Ill. App. 3d 863, 865, 425 N.E.2d 1215.) We therefore reject the State's position.

■ The State also argues that defendant's warrantless arrest was based on probable cause and exigent circumstances. While in his brief defendant argues that probable cause was lacking because the information Virginia Dumas supplied to police was not reasonably trustworthy, we believe that the trial court correctly found that under the totality of the circumstances such information established probable cause. See *People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147.

■ The State's argument on exigent circumstances is based on guidelines to assess whether such situation exists. These factors are:

"(1) [T]he time period between the commission of the crime and the arrest creates a need for prompt action or falls within the 'spirit' of the hot pursuit exception; (2) there was a deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) the suspect was armed or exhibited some sign of a violent character; (4) the officers were acting on a 'clear showing' of probable cause; (5) defendant was clearly identified as the offender; (6) there is strong reason to believe that defendant was in the premises entered; and (7) the entry was peaceful." (*People v. Grant* (1982), 104 Ill. App. 3d

551, 553, 432 N.E.2d 1200; see also *People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369.)

The State maintains that the arrest was properly based on exigent circumstances because defendant could have suspected that the police would arrive because the police were interviewing Virginia Dumas, thereby creating a substantial possibility that defendant would flee; that the police did not believe that they could obtain an arrest warrant for up to six hours; that the police proceeded to make the arrest without undue delay during a period of time in which they did not think they could obtain a warrant; that defendant's actions toward the victim indicated he had a violent character; that police acted on a "clear showing" of probable cause based on Dumas' information showing that defendant was the offender; and that the police reasonably believed that defendant was at the Greenwood address and that their subsequent entry was peaceful.

We are constrained to disagree with the State's position. Here, probable cause to arrest defendant was determined during the early morning interview with Virginia Dumas which according to the testimony occurred no later than 2 a.m. Yet, the police made no attempt to secure an arrest warrant during the three-hour interim before his arrest. In *People v. Wormack* (1980), 91 Ill. App. 3d 169, 172, 414 N.E.2d 177, the court observed that warrants may be obtained at night in Cook County. Further, while the gravity of the offense weighs substantially in the State's favor to justify the arrest (*People v. Olson* (1983), 112 Ill. App. 3d 20, 24, 444 N.E.2d 1147), the circumstances of this case do not show that the police were operating in hot pursuit of a suspected criminal. There is no indication that defendant was about to flee the area or that he even knew that his girlfriend would implicate him. (Compare *People v. Yates* (1983), 98 Ill. 2d 502, 516, 456 N.E.2d 1369.) The focus of the police conduct must be the reasonableness of their conduct. (98 Ill. 2d 502, 515, 456 N.E.2d 1369.) Here, we do not believe that such conduct was reasonable given the totality of the circumstances presented to the trial court, and the trial court's conclusion therefore that exigent circumstances were not present to justify a nonconsensual entry to effect defendant's warrantless residential arrest was correct.

■ We now turn to the State's argument that defendant's incriminating statements are admissible irrespective of the taint from his illegal arrest because these statements were not made until at least two hours had elapsed after his arrest, defendant was given his *Miranda* rights several times prior to these statements and defendant made his incriminating statements only after being told of Virginia

Dumas' account to police which implicated him. The State maintains that these factors are sufficient to attenuate the illegality of his arrest from his statements obtained thereafter.

The trial court, as noted, found insufficient basis to permit a claim that the taint from the illegal arrest had been dissipated before defendant made his incriminating statements. The question is whether the facts show a sufficient break to establish that his incriminating statements were not directly linked to his illegal arrest. In this examination, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, *** and, particularly, the purpose and flagrancy of the official misconduct are all relevant." (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) In *Brown* the petitioner was illegally arrested only for police investigatory purposes, advised of his *Miranda* rights and confronted with other evidence the police had secured. Less than two hours after his illegal arrest he gave a statement implicating himself in the crime. The Supreme Court observed that this statement was inadmissible as a product of an illegal arrest and a subsequently obtained similar statement was also tainted.

The police error in not securing an arrest warrant before making the arrest in this case is not comparable to the police conduct in *Brown* because substantial probable cause existed to arrest in this case. We believe, however, that the temporal proximity of somewhat more than two hours between the arrest and defendant's statements and the other general similarities to *Brown* support the trial court's conclusion that there was an insufficient basis to dissipate the illegality of the arrest and to allow introduction of defendant's statements. See cases cited in 3 LaFave, Search and Seizure sec. 11.4, at 634 n.107 (1978), and 1985 Supp., at 310 n.107.

Accordingly, the order of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.