THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEITH HODDENBACH, Defendant-Appellant.

First District (3rd Division)   No. 86—0857

Opinion filed April 20, 1988.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Keith Hoddenbach, appeals the trial court's denial of his motion to quash arrest and suppress evidence on the basis that his fourth amendment rights were violated. For the reasons stated below, we affirm the judgment of the trial court.

The evidence of record indicates the following. On December 11, 1984, Santos Martinez was shot to death and Richard Figueroa was shot and wounded in a single shooting incident. On December 19, 1984, defendant was arrested in connection with the shooting. Defendant was charged by indictment with two counts of murder, two counts of attempted murder, six counts of aggravated battery, three counts of armed violence, and one count of conspiracy. After a jury trial, defendant was convicted of the murder of Martinez, the attempted murder of Figueroa, and aggravated battery upon Figueroa. The trial court merged the murder counts into one count and the aggravated battery count into the conviction for attempted murder. The trial court sentenced defendant to consecutive terms of imprisonment of 80 years for murder and 30 years for attempted murder.

Prior to trial defendant filed a motion to quash his arrest. A hearing was held on the motion and the following evidence was adduced. Defendant testified that on December 19, 1984, he lived with his common law wife and their five-year-old daughter on the second floor of a six-flat apartment building at 2250 West Melrose in Chicago. At 11 a.m., defendant heard a knock at the front door. He asked who was there and was informed it was "the janitor." Defendant opened the door, and three police officers, with guns drawn, came into the apartment. The police stated that defendant was under arrest. One officer grabbed defendant's arm, took him into the living room, and stood over him with a gun. Three additional officers then entered the apartment. One officer went into the bedroom and another went into the kitchen. Defendant saw an officer coming out of the bedroom carrying defendant's shotgun. The officer returned to the bedroom in order to get some clothes for defendant to wear.

Chicago police officer John Howe testified that at 4:30 a.m. on December 18, 1984, he arrested Rafael Maldonado in relation to an

armed robbery. At that time, Maldonado was also a suspect in the murder of Santos Martinez. At 2:30 a.m. on December 19, 1984, Maldonado gave a statement to police implicating two other individuals in the homicide. Maldonado also described a gun and an automobile that were used in the incident. At 4:30 a.m., Maldonado told police that the two individuals were known by the nicknames "Popeye" and "Forehead." Police then took Maldonado to the Area 6 station, where he identified Pedro Reyes as Forehead and defendant as Popeye, and further identified Reyes and defendant from police photographs. The police and Maldonado had arrived at the Area 6 station at 6:30 a.m. Howe and several other officers and detectives then waited for a uniformed officer from the gang crimes north unit to arrive to accompany them to the locations Maldonado indicated defendant and Reyes could be found. Howe stated that the police attempted to obtain a search warrant, but were told that a judge would not be available until 10 a.m.

At around 9 a.m., Howe and other officers, along with Maldonado, drove to 2250 West Melrose, where defendant lived, and surveilled the building for approximately 15 to 30 minutes. They did not see defendant or his automobile. The police and Maldonado then drove to the address where Maldonado indicated Reyes could be found, and surveilled that area for approximately 15 minutes. Then they returned to 2250 West Melrose, arriving there at approximately 10 or 10:30 a.m. Maldonado pointed out to the officers the automobile that was used in the homicide. The automobile was owned by defendant and was parked two houses away from the building where defendant lived. Maldonado also pointed out the second-floor window of defendant's apartment.

The police then approached the building, rang a buzzer on the first floor, and were admitted by a man who identified himself as the manager of the building. The police proceeded to defendant's apartment. Howe knocked on the door and defendant answered. Defendant was dressed in his underwear. Howe identified himself and informed defendant that he had been implicated in a murder and was under arrest. Defendant asked if he could get dressed and asked the police to step into the apartment. Howe stated that several pieces of defendant's clothing were on the hallway floor. Defendant sat down and began dressing. Defendant then indicated that there was a jacket in the bedroom that he wanted to wear. Defendant directed Howe to the bedroom to retrieve the jacket. As Howe entered the bedroom, he observed a shotgun which fit Maldonado's description of the gun which was used in the murder. The gun was lying against an open closet

door. Howe observed a shotgun shell on top of a dresser in the bedroom. Howe seized the shotgun and shell. Subsequently, defendant was taken to the police station.

Following the arguments of counsel at the hearing, the court denied defendant's motion to quash arrest and suppress evidence. Further, the court found that the police's entry into defendant's apartment was not consensual. The court found, however, that exigent circumstances justified the warrantless arrest.

At trial, evidence was adduced which formed the basis of defendant's conviction. Gloria Becerra, the sister of the murder victim, testified that she last saw Martinez alive at 7 p.m. on December 11, 1984. Eyewitnesses testified that at around 8 p.m. on December 11, 1984, defendant fired gunshots on a group of people inside a hot dog stand at the corner of California and Cortland Streets in Chicago, killing Santos Martinez and wounding Richard Figueroa and two others. Evidence presented by a police officer and the medical examiner corroborated the eyewitnesses' testimony.

Specifically, the testimony of State witnesses Richard Figueroa, Dante Karranza, Dwight Littleton, and Jessie Lazarin indicated the following. Between 7 and 7:30 p.m. on December 11, 1984, Martinez went with his friend, Dwight Littleton, to the hot dog stand at California and Cortland Streets. Martinez and Littleton went into the back of the hot dog stand to play video games. Also present in the video game area were Figueroa, Karranza, Lazarin, and Roberto "Kiki" Rivera.

Before Rivera walked into the hot dog stand, he saw three men who displayed a gang gesture driving past the stand. Rivera saw that it was defendant riding in the front passenger seat. Witness George Cordova left the video game area of the hot dog stand at about 8 p.m. and sat in a car parked on Cortland Street near California. Cordova saw a blue Monte Carlo pull into the alley behind the hot dog stand. A man got out of the car, approached the hot dog stand, and pointed a long object inside the door.

Each of the four witnesses who were inside the hot dog stand described essentially the same events which then transpired. All four witnesses identified the offender as defendant. Defendant, who was carrying a gun, opened the door of the hot dog stand. Defendant cocked the gun and pointed it at Rivera. The gun did not fire and defendant stepped back outside. Defendant returned several seconds later, looked from side to side, cocked the gun, and fired at the counter. He then fired near the telephone, hitting Santos Martinez. Defendant then aimed the gun in the direction of the video games and

fired two shots. The shots wounded Rivera and Figueroa and also slightly wounded Karranza. Based on the evidence presented at trial, defendant was convicted by a jury.

On appeal defendant asserts that the warrantless arrest in his home violated his fourth amendment rights. Defendant asserts that exigent circumstances justifying the arrest did not exist, and that the police's failure to obtain a warrant was unjustified.

■■ We note that in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the United States Supreme Court held that absent exigent circumstances, the fourth amendment, applicable to the States by the fourteenth amendment (*Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, *reh'g denied* (1961), 368 U.S. 871, 7 L. Ed. 2d 72, 82 S. Ct. 23), prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. The guiding principle in determining whether exigent circumstances exist is reasonableness. (*Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, 389, (*en banc*); see also *Llaguno v. Mingey* (7th Cir. 1985), 763 F.2d 1560.) In determining whether law enforcement officials acted reasonably in a given case, courts must look to the facts known to the officials at the time they acted. *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369, *cert. denied sub nom. Williams v. Illinois* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364, *reh'g denied* (1984), 467 U.S. 1268, 82 L. Ed. 2d 864, 104 S. Ct. 3563; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.

In *Abney*, our supreme court identified three exigent circumstances: (1) the need for prompt action; (2) the absence of any deliberate or unjustified delay by the officers during which time a warrant could have been obtained; and (3) the belief that the suspect was armed and exhibited some sign of a violent character. (*People v. Abney*, 81 Ill. 2d at 169-71.) *Abney* also identified additional factors which would suggest that officers had acted reasonably: (1) the officers were acting on a clear showing of probable cause based on reasonably trustworthy information; (2) the defendant was clearly identified as the assailant; (3) there was strong reason to believe that the defendant was in the premises entered; and (4) the entry was peaceful. *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543; *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383.

Still other factors considered useful in determining the exigency of a particular situation are that: (1) a grave offense is involved, particularly a crime of violence; (2) there is a likelihood the suspect will

escape if not swiftly apprehended; and (3) the arrest was made at a reasonable hour of the day. (*People v. Yates* (1983), 98 Ill. 2d 502, 516, 456 N.E.2d 1369, 1376.) According to the supreme court, the aforementioned factors "should be utilized only as guidelines, not as cardinal maxims to be rigidly applied in each case." (*People v. Yates*, 98 Ill. 2d at 515-16.) The court in *Yates* stated that "exigent circumstances may well exist where there is only a serious crime coupled with a reasonable possibility of imminent danger to life, serious damage to property, destruction of evidence, or the likelihood of flight." (*People v. Yates*, 98 Ill. 2d at 516.) That is, the factors listed may not be present in every case, and the courts must consider the factors on balance. *People v. Cobb* (1983), 97 Ill. 2d 465, 484, 455 N.E.2d 31.

■ We find that the trial court properly found that exigent circumstances existed to justify the warrantless arrest. We have reviewed the record and find that the police acted reasonably based on the facts known to them at and prior to defendant's arrest. We look specifically to the evidence regarding the knowledge that the police reasonably would have possessed from the time that they received Maldonado's statement at around 7 or 8 a.m. until the time that they arrested defendant. First, the police made a good-faith effort to obtain a warrant. The officers' decision to proceed to defendant's residence without a warrant came after their attempt to obtain a warrant and immediately followed the arrival of the officers from the gang crimes unit to the station where Maldonado was being detained.

Second, contrary to defendant's assertions, we do not find that there was deliberate or unjustified delay by the officers during which time a warrant could have been obtained. After the police efforts to obtain a warrant failed, the police proceeded to surveil the locations where Maldonado had indicated that defendant and the other suspect could be found. Defendant argues that the State failed to show that the police were unable to obtain a warrant. Defendant asserts that the police could have made further attempts, once they received the statements from Maldonado, to contact a State's Attorney and a judge, even prior to 10 a.m. Defendant notes that warrants generally are obtainable in Cook County at virtually any hour of the night or day. *People v. Wormack* (1980), 91 Ill. App. 3d 169, 414 N.E.2d 177.

We find, however, that the totality of the circumstances in the instant case indicates that the police acted reasonably. The police surveillance revealed that defendant likely was in the apartment indicated by Maldonado. The first time that the police drove past the apartment, they did not see defendant or his car. After surveilling the apparent location of the other suspect, the police returned to defend-

ant's address. At that time, Maldonado pointed out defendant's car, parked two houses away from defendant's apartment. Defendant apparently was in the apartment at that time. Further, the police reasonably believed that defendant had exhibited a sign of a violent character, due to the nature of the offenses and the brutal manner in which they had been carried out.

Several other factors also indicate that the police acted reasonably. The police acted on a clear showing of probable cause based on reliable information from Maldonado, who clearly described defendant, his car, the gun used in the crimes, and the locations of the residences of defendant and Reyes. Further, Maldonado's statements created strong reason to believe that defendant was in the premises entered. Maldonado clearly identified defendant, pointed out his apartment window, and identified defendant's car parked outside. Additionally, the entry by police into defendant's apartment, while not consensual, was peaceful. The trial court's finding that the entry was peaceful was based on Officer Howe's testimony. We note that defendant's testimony indicates the use of at least some force by the police. The resolution of this matter depended upon the witnesses' credibility. After reviewing the record, we do not find that the trial court's evaluation was improper, and therefore will not disturb its finding. *People v. Motton* (1985), 139 Ill. App. 3d 661, 487 N.E.2d 1117.

Additionally, we note that the subject offenses, murder and attempted murder, are grave ones. Further, the arrest was made at a reasonable hour of the day, during mid-morning. There was some possibility that defendant would have escaped if not quickly apprehended, as he had ready access to his automobile. Further, the police could reasonably have considered the possibility that defendant was aware that Maldonado had spoken with the police, and might attempt to flee the area. While there is a lack of evidence specifically indicating a probability that defendant was armed at the time of the arrest, the police were aware, based on information from Maldonado, that a shotgun was used during commission of the offenses and that it was defendant who did the shooting. Further, there was no evidence that the gun had been disposed of or was otherwise taken from the possession of defendant. Therefore, the police could reasonably have believed that there was a strong possibility that the gun remained in defendant's possession or was located on his property. The police reasonably acted with the safety of the public in mind when they entered defendant's apartment.

Defendant points to the passage of time between the commission of the offense and the arrest. A lapse of time may make it much less

likely that any additional delay to obtain a warrant would have impeded an ongoing police investigation. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677.) However, a determination of whether the police caused an "unnecessary delay" is to be measured not from the time of the commission of the offense or even from the time when police learn the suspect's location, but from the time they obtain probable cause to arrest. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677.) The police in the instant case clearly had probable cause to arrest when they saw defendant's car parked outside of the apartment indicated by Maldonado. Probable cause to arrest likely existed even prior to the time when police located defendant's car and apartment, based on the reasonably trustworthy statements of Maldonado given in the police station. As stated above, however, we do not find that the police acted unreasonably. After the police's attempt to obtain a warrant failed and their investigation into the murder continued, exigent circumstances developed which justified the police's prompt action in arresting defendant without a warrant.

■ A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299.) We find that the totality of the circumstances in the instant case demonstrated the reasonableness of the conduct of the police in making defendant's warrantless arrest, and we will not disturb the trial court's decision denying defendant's motion to quash arrest and suppress evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.